# SUPREME COURT

OF

## PENNSYLVANIA.

## Eastern District. March Term, 1813.

*Philadelphia, Monday, March 29.*

CLEMSON *against* DAVIDSON and another.

*A received a sum of money from B, and gave him a receipt, stating it to be received as an advance on a shipment of flour then making on board a certain ship, to be con-*

REPLEVIN. This cause came on for trial a second time, before the Chief Justice at a *Nisi Prius* in *February* last, when the same facts were in evidence, that are stated in the preceding volume, (page 405) with these additions.

When the plaintiff went to receive from *Davidson* his notes for the flour which had been carried down to the *Hi-*

*signed to the house of B in Manchester. The flour was bought by A, after this receipt, and delivered by the vendor on board a ship freighted by A. A having stopt payment about the same time, agreed with the vendor of the flour, who was ignorant of the agreement with B, to rescind the contract of sale, and gave him back the bill of parcels, with a request that he would take possession of it. Held, that B, or his house, had no lien upon the flour that could prevent A from rescinding the contract with the vendor, and re-delivering the flour to him. To constitute a lien upon a corporeal chattel, possession is essential; and although, where a fund is appropriated to an individual, equity considers the appropriation as an assignment, and will protect it, yet this is only where from the nature of the fund, manual possession and transfer are impossible. If the chattel is susceptible of delivery, an appropriation without delivery cannot prevail against a bona fide purchaser, or quasi purchaser, without notice.*

*Where a replevin issued for flour on board a ship, and the master and consignee made no question about the freight, but were only desirous to prevent the ship from being implicated in the controversy between the respective claimants, both of whom were willing to send the flour on in the ship, Held, that the jury were warranted in finding that the claim to the payment of freight, before the flour should be delivered to the plaintiff, was waived by the master; and that the judge was right in instructing them that the master's pleading property in the adverse claimant, and not in himself, was evidence of the waiver.*

*Quære, whether a master has any lien for freight before the ship breaks ground.*

*The Court may grant a second new trial, where merely facts are in controversy; but it ought only to be in extraordinary cases.*

1813.

CLEMSON
v.
DAVIDSON.

*bernia,* he gave him a bill of parcels, which *Davidson* returned, saying his notes would be of no service to him, and telling him to go and take possession of the flour. That the plaintiff went to the captain of the *Hibernia,* and to her consignee Mr. *Griffith,* expressed his willingness to send the flour to the owners of the vessel, on consignment, and asked for a bill of lading on those terms; but Mr. *Griffith* directed the captain not to deliver the flour, unless the matter should be put on such ground that the ship should not be implicated. The same answer was given to *Pershouse,* who claimed in opposition to the plaintiff; and it was not until after property was claimed, and bond given in the replevin by *Pershouse,* that he obtained a bill of lading.

The defendant's counsel contended before the jury, 1. That the flour had been duly delivered, and the property transferred to *Davidson.* 2. That he never rescinded the contract of sale, or agreed to re-deliver the flour. 3. That *Pershouse* had a lien upon the flour, in consequence of the previous agreement with *Davidson.* 4. That the plaintiff could not recover, not having tendered the freight.

The Chief Justice left the delivery of the flour, and the rescinding of the contract, to the jury, as facts; instructed them on the third point, that *Pershouse* had no lien which put it out of *Davidson's* power to vacate the contract, if he was disposed so to do; and as to the freight, submitted it to the jury whether a tender of freight had not been waived by both captain and consignee, of which the plea by the former, *of property in Pershouse,* was evidence corroborating the circumstances which occurred before the replevin.

The inclination of the Court's mind upon the points of fact, seemed to be rather in the defendant's favour; but the jury found again for the plaintiff, and the defendants moved for a new trial.

*Hallowell* and *Tilghman* for the defendants.

1. The verdict is manifestly against the weight of evidence. The contract was to deliver the flour at the wharf or on board the *Hibernia;* and it was so delivered before the notes were demanded. The property was therefore in *Davidson.* If any thing on his part was necessary to rescind the contract, and restore the flour to *Clemson,* it was not re-

scinded, for he peremptorily refused to do any thing that should benefit one creditor more than another. The return of the bill of parcels is an after thought; it was not mentioned on the first trial. It was a useless document, and was neither given nor returned with a view to pass or devest the property; and unless it was returned with this view, it was of no value. Nothing stands in the way of a new trial upon this ground, but two verdicts. No doubt, however, the Court may order any number of new trials, where the jury err plainly against the fact. There is no rule that there may not be a new trial after a new trial in such a case; it depends merely upon the discretion of the Court, who grant or refuse it, as best answers the ends of justice. *Goodwin* v. *Gibbons* (a). Here there was no disputed fact. The jury went directly against the evidence, and the obvious inclination of his honour's mind.

2. *Pershouse* had a lien upon the flour, which put it out of *Davidson's* power to return it. The flour was bought for the security of *Pershouse*, and was specifically appropriated to his house, by shipping it on board a vessel that was to transport it to them. He relied upon the specific security, and not on the personal responsibility of *Davidson*. Under these circumstances, equity will protect the appropriation, and if necessary would follow the proceeds into the hands of third persons. *Ex parte Oursell* (b), *Ex parte Byas* (c), *Bates* v. *Dandy* (d), *Inglis* v. *Inglis* (e), *Sharpless* v. *Welsh* (f), *Yeates* v. *Groves* (g), *Row* v. *Dawson* (h), *Parke* v. *Eliason* (i), *Tooke* v. *Hollingsworth* (k). In *Fitzgerald* v. *Caldwell*, in this Court, an appropriation of a fund, by letter merely, was held to prevail against a subsequent attachment creditor.

3. Freight ought to have been tendered. The right to it gave the master a lien or special property, which is fatal to the plaintiff's action; for upon the issue, he must shew such a property as entitled him to possession at the time the replevin was served; and if the master was entitled to retain for any cause, the issue is against him. Nothing was done to

(a) 4 *Burr.* 2108.   (d) 2 *Atk.* 207.   (g) 1 *Ves. jr.* 280.   (k) 5 *D. & E.* 215.
(b) *Ambl.* 297.       (e) 2 *Dall.* 49.   (h) 1 *Ves.* 331.
(c) 1 *Atk.* 124.      (f) 4 *Dall.* 280. (i) 5 *East* 550.

waive this right. Mere silence will not answer. It was the duty of the plaintiff to tender the freight, without request; and the subsequent plea by the master, is of no importance, because that was put in after the replevin was returned, and the question is, what were the rights of the parties, when it was served.

1813.

CLEMSON
v.
DAVIDSON.

*Binney* and *Dallas* for the plaintiff.

1. The right of the Court to grant a second new trial is not questioned; but it is exercised only in extraordinary cases; cases in which the jury have been flagrantly wrong. It is not a sufficient reason for it, that the Court do not agree with the jury, and would have given a different verdict. *Walker* v. *Smith* (a). Upon the last trial there was new evidence. The bill of parcels was given as the symbol of delivery; it was returned as such to the vendor, with a request that he would take possession again. The whole turned on *Davidson's* intention, which was left as a fact to the jury. If he intended to rescind the contract, he did rescind it; for his acts were sufficient, if that was his intention. His refusal to sign an order, was from a desire not to furnish his creditors with a document to convict him of partiality.

2. No right of *Pershouse* was in the plaintiff's way. *Pershouse* had no lien; for possession is essential to lien, and where that is lost, the lien ceases. The very term implies it. *Hammonds* v. *Barclay* (b), *Drinkwater* v. *Goodwin* (c), *Kinloch* v. *Craig* (d), *Sweet* v. *Pym* (e). Here the goods were put on board *Davidson's* ship, he, and not *Pershouse*, having engaged the freight; and no bill of lading was signed until after the replevin. It stood up to that time upon a mere promise to consign; and in fact from the course of dealing between the parties, it is obvious that the promise and not the chattel was considered the security. All the defendant's cases are equitable appropriations, where the fund was not susceptible of delivery, and all that the owner could do to vest an interest, was to appropriate by letter or assignment. They furnish no rule for a case in which manual possession might be had. A secret appropriation of a corporeal chattel without delivery, can never stand in the way

(a) 4 *Dall.* 390.     (c) *Cowp.* 253.     (e) 1 *East* 4.
(b) 2 *East* 235.      (d) 3 *D. & E.* 119.

1813.

CLEMSON
*v.*
DAVIDSON.

of a person purchasing *bona fide*, and without notice; and that is our situation. *Walton* and *Fillis* v. *Ross* and *Jenks*, in the Circuit Court, is very like the present. There *Shoemaker* and *Travers* had promised to ship flour to *Walton* and *Fillis*, in payment of a debt. They put flour on board a vessel, and took a bill of lading in the name of *Walton* and *Fillis*, which was kept in their own hands. After this, the vendees having stopt payment, returned the .flour to *Ross* and *Jenks*, from whom it was purchased, but not paid for; and Judge *Washington* decided in favour of the latter.

3. Freight was waived. The conduct of the master and consignee before, and the plea of the former after the suit brought, prove it. The objection is now made, not by the master, but by *Pershouse;* and therefore no countenance should be given to it. The jury were rightly instructed upon the facts. But in law no freight was due; first, because the flour was ours, and they refused us a bill of lading for it. If the customary document is refused, the merchant may take his flour without freight; he is not forced to send it on, without any evidence of property. In the next place, freight does not begin to be earned by the marine law, until the vessel has broke ground. Up to that time, there is of course no lien. The owner may take back his goods, being answerable for the damages. *Curling* v. *Long* (a), 1 *Molloy* 370. *Lib.* 2. *c.* 4. *s.* 3. 5. 6.

TILGHMAN C. J. In my charge to the jury on the trial of this cause, I submitted two facts to their determination. 1st. Whether the flour was actually delivered by *Clemson* to *Davidson.* 2d. If delivered, whether the contract was afterwards rescinded by consent of both parties. The evidence of a delivery was so strong, that I cannot suppose the jury had any hesitation on that point. As to the rescinding of the contract, it appeared to me that the evidence inclined considerably in favour of the defendants; because *Davidson* refused to give an order for the re-delivery of the flour, and declared that he would do no act, by which any one creditor should obtain a preference. But I cannot say, that the conduct of *Davidson* was altogether consistent, or that there

(a) 1 *Bos. and Pul.* 634.

was no evidence which went towards rescinding the contract. When *Clemson* presented the bill of parcels, and demanded *Davidson's* notes, *Davidson* says, that he told *Clemson* the notes would be of no service, returned him the bill of parcels, and told him to go and take possession of the flour. The contract might have been rescinded without a written order for re-delivery, and as this is the second verdict in favour of the plaintiffs on a matter of fact, I do not think it proper to order a third trial. But it is not to be concluded, that the Court have not power to direct a third trial of matters of fact. There is no such rule; the Court undoubtedly possess the power, and cases may occur in which it may be necessary to exercise it. Two verdicts on the same point are entitled to great weight, and unless they are attended with extraordinary circumstances, I have ever thought that they ought not to be disturbed. Where juries persist in violating *the law*, the case is different. We have several times granted a third trial, and there is no reason why we should stop there. Thus much for the facts in this cause.

But there are two points of law on which the counsel for the defendants rely for a new trial. In the first place they say, that if the property was vested in *Davidson* by delivery, *Clegg* and *Pershouse* immediately acquired a right, of which it was not in *Davidson's* power to deprive them. And they contend in the second place, that issue being joined on the *property of the plaintiff*, the defendants were entitled to a verdict, because the captain had a lien on the flour for the amount of the freight.

1. If *Clegg* and *Pershouse* had a right to the flour, it must be either because they had a lien on it for the money advanced to *Davidson*, or because *Davidson* had made them some kind of conveyance, legal or equitable. The fact is that *Pershouse* had paid 16,000 dollars to *Davidson*, for which a receipt was taken, " for advance on shipment of " 158 bales of cotton, *shipped* on board the *British* barque " *Esther*, consigned to Messrs. *Clegg* and *Pershouse*, on " also a shipment now making in flour and cotton, on board " the *British* ship *Hibernia*, *to be consigned* also to Messrs. " *Clegg* and *Pershouse*." The flour was not at that time purchased by *Davidson*. The consignment was to be on the account and at the risk of *Davidson*, and *Clegg* and *Pers-*

1813.

CLEMSON
v.
DAVIDSON.

*house* were to be reimbursed out of the sales of the cotton and the flour. I see not how *Clegg* and *Pershouse* could have a lien on what was never in their possession. Possession is essential to a lien; and if one who has a lien parts with the possession, his lien in gone. There was no delivery on board the ship to *Clegg* and *Pershouse*, nor was it ever contemplated to make the delivery to them in the first instance. The promise was to *consign* to them. *Pershouse* trusted to the promise, and relied on the faith of *Davidson.* But it is said that the receipt given by *Davidson* vested an equitable interest in *Clegg* and *Pershouse.* At the time the receipt was given, it could vest no interest, because there was no subject in which there could be an interest, the flour not being then purchased; and when purchased, it is difficult to conceive how any *equitable* interest could arise to *Clegg* and *Pershouse*, to the prejudice of a third person who had no notice of their transactions. The defendant's counsel have cited a number of cases which do not come up to the point. They are to this purpose, that any order, writing or act, which makes an *appropriation* of a *fund*, amounts to an equitable assignment of that fund. The reason is plain, the fund being neither assignable at law, nor capable of manual possession, an appropriation of it, is all that the nature of the case admits. A court of equity will therefore protect such appropriation, and consider it as equal to an assignment. But very different is the case of a parcel of flour, which admits of actual delivery. Every man who purchases an interest in property of this kind, ought to take immediate possession; if he does not, he is guilty of negligence, and can have no equity against a third person, who contracts with the actual possessor without notice of a prior right. It is very material in the present case, that *Clemson* knew nothing of the contract between *Davidson* and *Clegg* and *Pershouse*, although he knew that *Davidson* bought the flour for the purpose of shipping; and when the agreement to rescind the contract was made, *Clemson* paid a valuable consideration by relinquishing his demand for the price of the flour. It is true, he knew then that *Davidson* had stopped payment; but he might have recovered part of his debt, though perhaps not the whole. The case of *Walton* and *Fillis* v. *Ross* and *Jenks*, in the Circuit Court of the *United States*, cited for the plaintiff, is very strong in his favour.

As to the lien for the freight, supposing that it once existed, I left it to the jury to decide from the evidence, whether it had not been relinquished. There was no express relinquishment; but it did not appear that the captain, or Mr. *Griffith*, the consignee of the ship, who were both applied to by *Clemson*, for possession, ever demanded freight, or put the delivery of the possession upon that point. Mr. *Griffith* seemed willing that the possession should be according to the right, and made no intimation that it would be withheld from *Clemson*, if *Pershouse* should acknowledge his right. He was anxious that the ship owners should not be involved in the dispute, and to that point his attention was directed. If the parties could not agree, Mr. *Griffith* knew that the dispute must be settled by law. The law was resorted to, and now, not Mr. *Griffith* nor the captain, but *Pershouse*, sets up this right to freight, in order to *prevent* a decision of the merits of the dispute between his house and the plaintiff. Captain *Finley*, the very man who might insist on this lien for freight, is a defendant in this action, and never made any such plea; he pleaded property in *Pershouse*. It is true, that notwithstanding this plea, it is necessary for *Clemson* to shew property in himself. He has shewn a *general* property; and as to this *special* property, now set up for freight, it lay with the ship owners or their agents, to insist on it or give it up. Whether they have given it up, is matter of fact to be inferred from their words and actions; and the plea of *Finley* that the property was in *Pershouse*, is evidence (though not conclusive) that in his opinion, this lien for freight did not exist. It is said that the plea was put in after the action brought, and the question is, what were the rights of the parties at the commencement of the action. That certainly is the question; but what is said or done by a party after the action commenced, may be strong evidence to shew what his rights were *at the commencement*. I am of opinion therefore, that the jury were warranted in saying that the lien for freight was relinquished, if it ever existed. Whether it did exist, the ship having never broken ground, it is unnecessary to decide. Upon the whole, I am against a new trial.

YEATES J. The Court possesses the unquestionable right of awarding a new trial, when a verdict has been rendered

*Margin:*

1813.

CLEMSON
v.
DAVIDSON.

against the weight of evidence, or it is manifest that injustice has been done. In the exercise of this right, they will regulate their conduct by a legal discretion. They will not order a new trial against two concurring verdicts upon a question of fact, unless in an extraordinary case. More, however, may be urged in favour of the last verdict than of the first, new evidence having been laid before the jury by *Nathan Davidson*, which had been wholly omitted on the first trial. It was testified by him, that when the plaintiff called upon him for his promissory notes in payment of the flour, he gave him a bill of parcels, which *Davidson* delivered back to him, saying he might take his flour. If this be a correct statement of the fact, it may be supposed to warrant the inference that the original contract was rescinded, and that an act was done by *Davidson* to vacate it, flowing from his wishes upon that occasion. I would not, however, be understood to say, that I should have concurred in such a verdict, if I had been one of the jurors; because this circumstance of the bill of parcels renders *Davidson* inconsistent with himself in other parts of his story. But the jurors were the proper judges of his credibility, and under all the circumstances of the case, I do not feel myself justified in disturbing the second verdict.

I can see no reason for changing the opinion which I delivered upon the former motion, that *Clegg* and *Pershouse* had no specific lien on the flour shipped, in consequence of the advances made by one of the partners on the spot. I still think that *Davidson* had the legal right of vacating the contract made with *Pershouse*, if he thought proper so to do; though he thereby subjected himself to an action. I am more strongly fortified in my opinion since the present argument. It remains only for me to say, that I think the Chief Justice was correct, when he charged the jury that they might infer from all the facts of the case, that the initiate right to the freight of the flour was waived by the consignee. Mr. *Griffith* testified, that he was totally opposed to implicating the vessel under his care in the controversy, and must have well known that the possession of the flour would entitle the foreign owners to the freight on the performance of the voyage.

Upon the whole, I am of opinion, that the rule to shew cause why a new trial should not be granted, be denied.

BRACKENRIDGE J. It has been made very clear to me, that the ship owner had no lien on the goods put on board, beyond the compensation for the taking on board, the stowage, unshipping and putting on the wharf again, and the demurrage to her sailing which this might occasion, this being before he broke ground. But all this was included in the freight, which the person putting on board offered to pay, provided he would carry for him. He offered to be answerable for it at the end of the voyage, when freight should be earned, which was the same thing. After this, he was a wrongdoer to retain for any other person, and his defence set up to the replevin, fails.

It has been rendered abundantly clear also, that *Pershouse* had no lien. On the former motion for a new trial, it struck me *en masse* from the evidence, that he could have none, but I had not the detail of facts so fully in mind as I now have. I could collect them only from hearing the report of the testimony read, or the comments of the counsel. The exposition of the counsel as to these facts, and as to this point, have been now more full, and the comments and legal discussion more at large. I shall not go into them, but leave it to a report which I shall be happy to see minute, and the reasoning at length. It will be of use to the student and the judge. The matter, therefore, stands as between *Clemson* and *Davidson*. There was a sale, but the substratum to the sale being completed was wanting, the giving notes, that is the paying for the property. The delivery was *quodam modo*. It carried with it, in the nature of the case, the same precedent condition. Without this it was but a carrying the sale into effect to a farther extent, a delivery *sub modo*, a sort of delivery, or, as the *Virginian* says in his expressive phrase, *sort and not sort*. In strictness there was no rescinding or annulling the contract on the part of *Davidson*, but a refusal to carry it farther, and comply with the last requisite to a complete transfer and change of possession. When the bill of parcels was offered to him, which was a circumstance that was not in the former evidence, he disclaimed a retainer or accepting this for the evidence of the transfer and possession. Could he set up a right to retain after this, as he has done, or has been done for him?

I consider the case, 7 *Mass. Rep.* 453, as *alter et idem* with this case; another case with the like facts, save that some particulars were wanting to make it so strong a case for the defendant as this. The consignor put property on board the ship of the consignee. He delivered the invoice, and the bill of lading was signed by the captain, the agent of the consignee. There was shewn in evidence to the jury, an agreement with the consignee, by which the consignor agreed to accept draughts, and advance cargoes on credit. Also a copy of an account current, in which the cargo in question was charged by the consignor to the consignee. This property was attached as that of the consignee, by a third person. It was shipped under the agreement and bill, on board a ship sent as an entire chartered ship, for the purpose of conveying the cargo in question to the consignee. It was contended " that " the delivery to the master of the ship owned wholly by the " consignees, was a delivery to them to all intents and pur- "poses, he being their servant, and duly authorised to " receive that delivery. The property thus vested in them, " and the power and rights of the consignor wholly ceased."

By *Parsons*, Chief Justice: " the agreement cannot bind " the consignor after the insolvency of the consignee. The " credit contemplated, being founded upon the supposed abi- " lity of the consignee at the expiration of the term."

No tariff has been hitherto settled, by which it can be ascertained how many jurors shall go to make a judge, or how many verdicts shall weigh against the opinion of a Court; and grant that the Court may overrule *ad infinitum*, yet ought not this to be confined in discretion to a matter merely of artificial science, I mean questions which are a part of that science of fee simple, or fee tail, contingent remainder or executory devise, springing use or resulting trust, and not when the matter of law is merely a deduction of moral reason. The right and wrong of the case, the common mind may be more competent to decide. What is the law of the case, but the justice of it? My reason is with the verdict, and therefore I shall not interfere.

New trial refused, and judgment for plaintiff.