MOTTRAM and others *vs.* HEYER, survivor, &c.

The vendor's right of stoppage in transitu does not cease on the arrival of the goods at the port of delivery, until they have come to the vendee's actual possession or his constructive possession by a delivery to his agent.

The *entry* of the goods by the vendee at the custom house without the payment of the duties, is not a termination of the *transitus*; although, if placed in a public store, under the warehouseing system, it would be. *Semble.* *Per* WALWORTH, *Chancellor.*

A demand of the property from the vendee, made before its actual delivery to him, and while it is in the custody of the custom house officers, is not sufficient to enable the vendor to reclaim it. The demand must be made of the carrier or middleman, in whose custody it is at such time, and under such circumstances that they may prevent its delivery to the vendee. *Per* WALWORTH, *Chancellor,* and TALCOTT and VAN SCHOONHOVEN, *Senators.* *Contra,* PORTER and PUTNAM, *Senators.*

The defendants were merchants in New-York. They ordered the plaintiffs to send them from England a cask of hardware. It arrived April 7, when the bill of lading was delivered to plaintiffs, and the freight paid. On the 9th, the goods were *entered* at the custom house, and carried from the ship to the public store. While there, and before the duties were paid, the defendants became insolvent, and the plaintiffs demanded of them the goods. They refused to deliver them, and afterwards paid the duties, and removed them to their store. *Held,* the demand was not sufficient to revest the title in plaintiffs.

ERROR to the supreme court. The facts of the case, with the points argued by the counsel for the respective parties, and the reasons of the supreme court, will be found in 1 *Denio*, 483. The cause was argued here, by

*W. Curtis Noyes,* for plaintiff in error, and

*E. H. Owen,* for defendant in error.

THE CHANCELLOR. Two questions are presented for our consideration, to both of which the attention of the judge who tried the cause, and the attention of the counsel, was distinctly called at the time of the trial. *First;* whether the right to stop in transitu still existed at the time the agent of the plaintiffs applied to Heyer, the importer, and requested him to give up

Mottram *v.* Heyer.

the goods to them, on account of his failure ? *Second;* whether such a demand from the vendee was a proper exercise of the right to stop in transitu; and to enable the plaintiffs to maintain this action against the vendee, for detaining the goods which came into his actual possession after that demand ?

The general principles in regard to the right of stoppage in transitu, are now very well settled, both here and in England ; and the only difficulty is in applying those principles to the facts of particular cases, as they from time to time arise. One of those principles is that, though by the common law a sale of the goods may be complete without actual delivery, yet if the purchaser fails after such sale, and while the goods remain in the hands of the vendor, or while they are in the hands of a middleman in the course of their transit to the possession of the vendee, the vendor may retain them in his own custody, or may stop them in the hands of such middleman, and resume and retain the custody of them, until he is paid or secured for the price of the goods.    And this right exists whether the time of credit which was given, has or has not expired, at the time the right to retain the goods, or to resume the possession of them by stopping them in transitu is exercised by the vendor, or by his authorized agent. (*Feise* v. *Wray,* 3 *East's Rep.* 96. *Brow. Law of Sale,* 507.)    Another principle is, that the right to stop *in transitu* continues not only during the time that the goods remain in the possession of the carrier, either by land or by water, but also while they are in the hands, or under the control of a middleman, in a place of deposit connected with the transmission or delivery of them, until they come to the actual or constructive possession of the vendee himself. (*Buckley* v. *Furniss,* 15 *Wend.* 137.    *Covill* v. *Hitchcock,* 23 *Id.* 611. *Abb. on Ship,* 360.)    But an actual delivery of the goods to the vendee, or a constructive delivery to him, by a delivery to his agent who is authorized by him to receive the goods as such agent, and not as a mere middleman, puts an end to the vendor's right.

Here, the facts in evidence would have authorized the jury to find that the goods were not deposited in the public store under

Mottram *v.* Heyer.

any of the warehousing provisions of the revenue laws, but had been taken there by the custom house officers, because the consignees had neglected to pay the duties and obtain a permit to land the goods. If so, they were in the same situation, substantially, as they would have been under the fourth section of the English statute, 26 *Geo.* 3, *ch.* 59, in relation to wines. Under our revenue laws, if the consignee or owner of goods neglects to enter them, and pay or secure the duties within the time prescribed by law for that purpose, so as to get a permit to land the goods, the revenue officers are required to take and retain the possession thereof; and if not claimed within a limited time, such goods are to be sold for the payment of the duties. The entry of the goods at the custom house on the 9th of May, without paying the duties and getting a permit to land such goods, certainly did not deprive the plaintiffs of their right to stop the goods on board of the vessel which arrived the day before. And the removal of the goods from the vessel to the public store by the custom house officers, until the consignees should entitle themselves to claim the possession and disposition of the goods by completing their entry by the payment of the duties, was merely substituting the public store in the place of the vessel, as a place of deposit in the transmission of the goods to their place of destination; which place of destination was the place where the consignees expected to sell the goods, or to deposit them to await their further order and direction.

The fact that there had been no preliminary entry of the wine, in the case of *Northey* v. *Field,* (2 *Esp. Rep.* 613,) affords no grounds for distinguishing that case from the present in principle. Nor was that an isolated case in England. For it was followed by Lord Chief Justice Ellenborough, ten years afterwards, in the case of *Nix* v. *Olive,* (*Abbott on Ship.* 377,) where the goods were sent to the king's warehouse, under the statute, because the consignee was not able to pay the duties. There the consignee, while the wine remained in the hands of the custom house officers, under the statute, for the non-payment of such duties, sold the wine to the plaintiff, who did not upon such sale pay the duties so as to obtain possession of the wine.

And the consignee having become bankrupt, the agent of the consignors, after such sale to the plaintiff, paid the duties and obtained possession of the wine. Under these circumstances it was decided that the right to stop the goods was not divested. Upon the authority of these two cases, which do not appear ever to have been questioned in England, as well as upon principle, I think the goods in controversy had not come into the actual or constructive possession of the consignees in the present case, prior to the claim of the goods by the agent of the plaintiffs on the 28th of April; and that their right to stop the goods *in transitu* had not then terminated. The payment of the freight was wholly immaterial, except that the lien for the same would have remained, although the goods were taken possession of by the custom house officers, if such payment had not been made. But the payment of the freight to the carrier does not divest the seller of his right to stop *in transitu* while the goods are in the course of transmission, or in the hands of a middleman.

Where goods are placed in the public store under the warehousing system, either in this country or in England, after a perfect entry of them for that purpose, they are to be considered as having come to the possession of the vendee, at the place where he intends they shall remain until he gives further order for their disposal; and the law recognizes his right to sell or dispose of them as he pleases; subject only to the custody of the officers of the revenue for the security of the payment of the duties, at the time when by law those duties become due and payable. And in such a case, I have no doubt that the right of stoppage *in transitu* should be considered as at an end the moment the goods are thus deposited, after a perfect entry for that purpose has been made. This is also in accordance with the decision of the court of sessions in Scotland, in the case of *Strachan* v. *The Trustees of Knox & Co.* referred to by Brown, (*Brown on Sales*, 536.) There the goods were imported and were deposited by the consignee in a bonded warehouse, under the provisions of the statute, (43 *Geo.* 3, *ch.* 132,) which statute was the commencement of the present warehousing

Mottram v. Heyer.

system in England. And the court properly decided that the transitus was ended.

The question what the vendor must do to exercise the right of stoppage *in transitu*, and whether the right was properly exercised in this case, remains to be considered. Upon the trial of the case of *Scott* v. *Pettit*, (3 *Bos. & Pul.* 469,) Lord Chief Justice Alvanly suggested a doubt whether the bankruptcy of the consignee, subsequent to his order for the goods, was not of itself a countermand of the order, so as to entitle the consignor to reclaim the goods as against him and his assignees in bankruptcy. But when the case came before him in bank, he admitted that the mere act of bankruptcy was not sufficient to prevent the absolute change of the property, where it came to the hands of the bankrupt or his assigns before the right of the vendor to stop in transitu was actually exercised. It is not necessary, however, that the vendor should take actual possession of the goods before they come to the possession of the vendee, to exercise the right; though it is said Lord Hardwick formerly held that it was so. Under the decisions made within the last half century, it is sufficient if the vendor or his agent at any time before the transitus is ended, gives notice to the carrier, or middleman, in whose possession or under whose control the goods are, of his rights, and prohibits the delivery of the goods to the vendee or his assigns. This was decided in the case of *Northey* v. *Field*, before referred to, where the agent of the consignor applied to the proper officer of the customs, before the goods were sold for the non-payment of the duties, but did not succeed in obtaining possession. And the surplus proceeds of the sale, beyond the amount of such duties, were in that case declared to belong to the vendors, upon such an exercise of the right. In *Holst* v. *Pownal*, (1 *Esp. Rep.* 240,) the right was exercised by giving notice to the master of the vessel, claiming the goods and tendering him an indemnity for delivering the goods to the party claiming the right. And in *Litt* v. *Cowley*, (7 *Taunt.* 169,) it was decided that if the carrier, after notice to him by the vendor not to deliver the goods, delivers them to the vendee, they may be reclaimed

from the latter by the party thus exercising his right to stop them *in transitu.* So in *Newhall* v. *Vargas,* (13 *Maine Rep.* 93,) it was decided that a claim made by the vendor, or his agent, upon any person having the charge of the goods, before the transit was ended, was a sufficient exercise of the right. But no case has gone so far as to allow a mere notice to the vendee before the goods came to his possession, of the vendor's wish to exercise the right, or a notice of his claim given to any other person not having the custody or control of the goods, to be a good exercise of the right to stop *in transitu.* The right is always adverse to the receiving of the goods by the consignee, and the only proper way to prevent him from receiving them is for the vendor or his agent, to resume the actual possession of the goods or to give notice of the claim to stop in transitu to some one who has them in custody, either personally or by his servant, and to prohibit such custodee from delivering the goods to the vendee until the claim of the vendor for the purchase money is adjusted. Having exercised his right in that manner the creditor is then in a situation to demand the actual possession of the goods from such middleman, upon payment of such legal liens and claims as existed against the goods at that time, and which are entitled to a preference over his claim for the unpaid purchase money. Or he may follow and reclaim the goods in the hands of any other person into whose possession they have subsequently come without his consent. But to make the notice effectual it must be given either to the person who has the immediate custody of the goods, or to the principal whose servant has such custody, at such time and under such circumstances that he may with reasonable diligence prevent the delivery of such goods to the vendee. ( *Whitehead* v. *Anderson,* 9 *Mees. & Wel. Rep.* 518.) This is a substitute for an actual resumption of the custody of the goods by the vendor. For, after the right has been exercised in that manner, the legal presumption is that the delivery of the goods will be stopped ; and that the middleman will not render himself liable by a delivery of the goods to the vendee without the subsequent consent of the vendor. But

a mere notice to the vendee that the vendor wishes to prevent him from obtaining possession of the goods, will not be likely to produce that effect. And if it should be held to be sufficient it will be necessary to devise some means by which the rights of bona fide purchasers from the vendee without notice, after the goods have come into his possession, may be protected. For in that case the exercise of the right would give the original vendor a paramount claim to the goods over such bona fide purchaser. In the present case therefore, the agents of the plaintiffs should have stayed the goods in the public store, by giving notice to the custom house officers having charge of the goods, of the claim of the consignors to stop in transitu, and prohibiting them from delivering the goods to the consignees. And this should have been done before such consignees had obtained the possession of the goods after paying the duties thereon.

Upon the ground, therefore, that the right of stoppage in this case had not been duly exercised at the time when the consignees obtained the actual custody of the goods by a delivery to them at the public store, the plaintiffs could not recover in this suit. The point upon which the judge erred at the trial was for that reason immaterial, and afforded no grounds for reversing the judgment of the superior court. The judgment of the supreme court should therefore be affirmed.

PORTER, Senator. The goods in this case, were in the custom house stores in New-York, at the time that the plaintiffs gave notice to the defendant, the consignee and purchaser, of their claim of the right to stop them *in transitu*, in consequence of the insolvency of the purchaser. The purchaser had paid the freight, entered the goods in his name as owner, but had not paid the duties; and they were placed in, and remained in the government store house, because the duties had not been paid. And the question is, was the *transitus* at an end when the plaintiffs made their claim. What took place afterwards cannot vary the rights of the parties; for the actual possession acquired by the defendant by the payment of the duties, and taking the goods from the public store, while he

was asking time to give a definite answer to the claim of the plaintiffs, looks too much like a trick or fraud, to strengthen his case in any manner. Indeed it appears to me that the rights of the parties were fixed by the notice of the claim. In 2 *Kent's Com.* 543, it is said that a claim and endeavour to get possession, is equivalent to an actual stoppage of the goods.

This right of stoppage does not proceed upon the ground of rescinding the contract, but it is a kind of equitable lien which the law gives the vendor, when the purchaser becomes insolvent, to be exercised at any time before the goods are delivered to the possession of the vendee. This delivery must be an actual delivery to the vendee; or if not, it must be attended by circumstances which are equivalent to an actual delivery. It is not every constructive delivery that will put an end to the right of stoppage.

The point of inquiry is whether the property is to be considered as still in its transit; for if it has once fairly arrived at its destination, so as to give the vendee the actual exercise of dominion and ownership over it, the right is gone. It becomes then material to determine what acts amount to evidence of dominion and ownership over the goods. Payment of freight will hardly be contended to be such an act. When the goods arrived in New-York they did not pass from the hands of the carrier into the actual or constructive possession of the defendant. The course of business in such cases I understand to be this: A custom house officer goes on board the vessel as soon as she is reported to the collector, and takes possession in behalf of the government, of the goods on board, to the exclusion of the owners. They may, doubtless, on payment of the duties, and complying with the custom house regulations, obtain permission to take their goods from the vessel into their own possession. But otherwise they are taken to the public stores and continue in the possession and under the exclusive control of the officers of the customs. The owner may then enter th goods at the custom house, as it is termed; that is, he makes the proof required concerning the goods and the ownership, and has the fact of his ownership entered upon the books of

the office. Is there, in these proceedings, any act of the defendant affecting the immediate possession, or that tends to show that he has assumed an actual dominion or control of the goods? He has taken a requisite step to enable him thereafter, and when he shall have paid the duties, to take the property into his own possession. It cannot be denied that in order to put an end to the right of stoppage *in transitu,* the goods must have come under the control of the consignee or purchaser; and that he shall have exercised some act of ownership over them. What are acts of ownership in the sense in which the words are used on this subject? Payment of freight is certainly not one; nor is the entry of goods at the custom house. That act is evidence that the person making the entry claims to be the owner; and he will be treated as the owner at the custom house; but it has no connexion with any control or dominion over the goods affecting the possession. The defendant never pretended to have any right to direct or control the custody of the goods. They were in the exclusive possession of the government.

If this right of stoppage *in transitu* is one that deserves to be favored and encouraged; one that promotes justice and honesty; one that prevents the property of the vendor from being unjustly and often fraudulently appropriated to the payment of a bankrupt's debts, who fails before the goods reach him, I think we should not give a latitudinary construction to pretended or constructive acts of ownership; but that we should hold that the goods must come into the actual possession or under the control of the purchaser, his agent or servant, before the right of stoppage shall be at an end. Until the duties were paid in this case, the whole control and possession of the goods was in the officers of the government: they were *quasi in custodia legis,* as an eminent authority has justly characterized it; and it was impossible for the defendant to set up any such possession, actual or constructive, as would have put an end to the plaintiff's right of stoppage *in transitu.* These views are fully sustained by authority.

The case of *Norther* v. *Field,* (2 *Esp. Rep.* 613,) seems to

me to be precisely in point.   The goods in that case were placed under the control of the officers of the customs, and were continued in their possession because the duties were not paid.   They were sold for the non-payment of duties; but the agent of the consignor applied for and endeavored to get possession of them before the sale.   It is attempted to distinguish that case from the present, because it does not appear from the report, that the consignees had either paid the freight, or entered the goods at the custom house.   As I understand the law applicable to the case, these acts, if done, are of no importance, and do not impair the consignor's right, as I have attempted to show.   The cases then are parallel.   Lord Kenyon held in the case cited, that the purchasers, who had become bankrupt, had no title to the actual possession until the duties were paid; and that the claim made by the agent of the consignor before the sale, was a sufficient stopping *in transitu,* to secure the rights of the consignor.   I do not find that this case has ever been questioned. Chancellor Kent, (2 *Kent's Com.* 547,) has sanctioned the rule as follows : "But if the goods have arrived at the port of delivery, and are lodged in a public warehouse, for default of payment of the duties, they are not deemed to have come to the possession of the vendee, so as to deprive the consignor of his right."   The goods are taken from the carrier directly into the custody of the government ; and the entry of the goods by the consignee, has no connexion with, or influence over the possession.

I am therefore of the opinion that the right to stop the goods in question *in transitu* remained with the vendors, and that it was legally exercised ; and consequently that the judgment of the superior court should be *reversed.*

Putnam, Senator, delivered a written opinion in favor of reversing the judgment of the supreme court, in which he concurred in the views of Senator Porter.

Van Schoonhoven, Senator, delivered a written opinion for affirmance, holding with Chief Justice Bronson, that the *tran-*

*situs* ended before the attempt made by the plaintiffs' agent to obtain possession of the goods, and with the chancellor, that the demand made of the defendants was not sufficient to revest the title of the goods in the plaintiffs. It should have been made of the persons having their actual custody.

LOTT, Senator, delivered a written opinion in favor of affirmance.

JOHNSON, BARLOW, and TALCOTT, Senators, delivered oral opinions in favor of affirmance.

FOLSOM, Senator, delivered an oral opinion for reversal.

Upon the question being put, "*Shall this judgment be reversed?*" the members of the court voted as follows:

*For affirmance:* The PRESIDENT, The CHANCELLOR, and Senators BACKUS, BARLOW, JOHNSON, JONES, LOTT, SANFORD, SEDGWICK, J. B. SMITH, TALCOTT, VAN SCHOONHOVEN, WHEELER,—13.
*For reversal:* Senators EMMONS, FOLSOM, PORTER, PUTNAM—4.

Judgment affirmed.