## SUPERIOR COURT.

Fred'k B. Ives and Samuel S. Osborne agt. J. Polak, Jr.,
and Chas. C. Bartling.

Plaintiffs, by an agreement on the 20th Jan. 1857, sold to Polak brandies in bond, on a credit of six months, for which notes were dated on that day; but by delay they were not delivered to plaintiffs until the 4th of February, 1857. On the said 20th January, Polak offered and engaged to sell the brandies to Bartling, to give him a bill in a day or two, and have the goods transferred. Bartling at the same time giving Polak his check in payment.   Bartling got a bill of the brandies, dated 20th January, a few days thereafter.   The bill of the plaintiffs was delivered to Polak a few days after the purchase.

On the 23d of January the plaintiffs gave Polak the following paper :—

" We authorize J. Polak, jr., to withdraw the following packages, viz., (giving their marks.)
      "*Jan.* 23d, 1857.                              " Ives, Beecher, & Co."

And on the 20th of January Polak delivered to Bartling this document—

" I authorize A. A. Bartling to withdraw the following packages, viz., (giving the same marks.)
      "*Jan.* 26, 1857.                              J. Polak, jr."

On the 6th Feb., 1857, the plaintiffs wrote to Bartling that they had seen, on the
books of the custom-house, that several packages of brandy, now in the bonded
warehouse of Wm. B. Peck, had been transferred to him by J. Polak, jr., and
and they notified him that they had not parted with the possession of the goods,
and should hold them as their own property.

*Held,* that the right of the plaintiffs to the goods, was not divested by any suffi-
cient constructive delivery to either Polak or Bartling.   The rule is limited
to *bills of lading*, which possess something of the character of negotiable
paper.   No other instrument of transfer, or mercantile document, in the hands
of a vendee without title, possesses the power of destroying the right of stop-
page, until perfected by actual possession

*New-York Special Term, June,* 1857.
THE facts will appear in the following opinion:—

MR. FIELD, *for plaintiffs.*
MR. STEVENS, *for defendant Bartling.*

HOFFMAN, Justice.   I am clearly of opinion that the pur-
chase made by Polak of the goods of the plaintiffs was with a
fraudulent intent; that he knew of his utter inability to pay for
them; that it was with a view of instantly raising money on
them.   Indeed, almost every circumstance held necessary to
stamp such a transaction with fraud, marks the present case.
Between the plaintiffs and Polak the sale was invalid, and the
plaintiffs could reclaim the goods or refuse delivery.

Then arises the important question as to the rights of the
defendant Bartling.   The sale by the plaintiffs to Polak was
made on the 20th of January, 1857.   Negotiations for such sale
had taken place previously, but the agreement to sell was
made and the notes dated on that day.   The sale was on a
credit of six months, and the amount $1,090.81.   The brandy
was in bond.   The notes were not delivered until the 4th of
February, 1857.   It seems they were not called for by the
clerk of the plaintiffs before that time.

On the 20th of January, the very day of the sale, Polak ap-
plied to the defendant Bartling for an advance or loan of money.
At that time he owed Bartling about $3,000 upon former trans-
actions, which was secured by a chattel mortgage.   He owed

him also the sum of $700 for money loaned on the 12th of January, and $500 for a loan of $250 on the 17th of December, and another of $250 on the 20th of December, 1856. Bartling refused to loan him any more money, but said, if he had any goods to sell he would buy them. Polak then made a memorandum of brandies which he claimed to own. He offered and engaged to sell them to Bartling; to give him a bill in a day or two, and have the goods transferred. Bartling then gave him a check for $450, and says, that the $700 loan of the 12th of January, was to be cancelled.

Bartling states, that it was the second or third day after the 20th that he got a bill of the brandies; he afterwards said it might have been longer. He said he found it somewhat different. It is produced, and is dated the 20th January, and amounts to $1,097.81. The $700 and $450 amount to $1,150.

Polak swears that the bill from the plaintiffs was delivered to him about a week after the purchase. When Polak obtained from Bartling the $450, and satisfied, as we will assume, the $700, the former had nothing from the plaintiffs to show a title to the goods. There was nothing but an agreement to sell—no bill of parcels even made out, no notes delivered, or part payment made; and nothing indeed to show that on the 20th of January there was any binding contract between the parties; and certainly the right of the plaintiffs to hold the goods, had they immediately discovered the fraud, would have been indisputable.

But on the 23d of January, the plaintiffs gave Polak the following paper:—

" We authorize J. Polak, jr., to withdraw the following packages, viz., CD, 124, 127, 128, 129, 130, 131, 142, 143, 144, 145, 150 and 151.

*Jan.* 23, 1857. - IVES, BEECHER & Co."

And on the 20th of January, Polak delivered to Bartling this document:—

"I authorize A. A. Bartling to withdraw the following packages, viz., CD, (the same as above enumerated.)

"*Jan.* 26, 1857. J. POLAK, JR."

I think it is a fair inference from the evidence, that the bill of parcels of the brandies, as sold to Bartling, was delivered at the same time with the order or authority of the 20th of January. Entries, corresponding with these authorizations, were made upon the books of the custom-house.

It should also be observed, that the plaintiffs' rights, whatever they may be, are not prejudiced by the receipt of the notes on the 4th of February. They were obtained by Ingersoll, the clerk, in the course of his business duties, and cannot be treated as a waiver of their rights.

On the 6th of February, 1857, the plaintiffs write to Bartling that they had seen, on the books of the custom-house, that several packages of brandy, now in the bonded warehouse of William B. Peck, had been transferred to him by J. Polak, jr. and they notified him that they had not parted with the possession of the goods, and should hold them as their own property. On these facts the relative rights of the plaintiffs and of Bartling are to be determined.

I have examined the leading cases referred to, especially *Mottram* agt. *Heyer*, (5 *Denio*, 629.) The general subject has been carefully examined in the late case of *Harris* agt. *Hart*, at the general term of this court, in March last, Mr. Justice WOODRUFF delivering the opinion. I have come to the conclusion that the right of the plaintiffs to the goods was not divested by any sufficient constructive delivery to Polak. As to him, I consider the case to be clear; and as to Bartling, I have, after some hesitation, arrived at the same result.

In the first place, when Bartling advanced the $450, and gave up $700, Polak had no title to the brandies, and Bartling simply relied upon his assertion of ownership. Next, the order to withdraw the brandies of the 23d of January, given by the plaintiffs, was not seen by Bartling as he states. It was insufficient, in my opinion, to effect a constructive delivery to Polak.

Ives and Osborne agt. Polak and Bartling.

Bartling, then, had nothing but Polak's authority of the 20th, which, even if sufficient, if he had had a title as between them, was given by one who had no title, which could not be divested by the plaintiffs, and no title at all in law by reason of his fraud.

Again, the rule laid down in the leading case of *Lichbarroue* agt. *Mason,* and followed in many others, is limited, I apprehend, to bills of lading which possess something of the character of negotiable paper. No other instrument of transfer, or mercantile document, in the hands of a vendee without title, possesses the power of destroying the right of stoppage, until perfected by actual possession.

In *M'Ewan* agt. *Smith,* (2 *House of Lord's Cases,* 309,) S., the owner of sugars, sold them to B., to whom he gave a delivery order, addressed to his agent A., and took a bill of exchange for the price : B. sold the sugars to M., and transferred to him the delivery order. The goods were in the warehouse of L., on whose books they were entered as received from A. on account of S. Neither B. nor M. took any steps to get possession under the order until rumors prevailed of the insolvency of B. : M. then presented the delivery order to A., the agent, and received from him a fresh order addressed to the warehouse keeper. Before the sugars could be actually delivered, S. had them removed. It was held, that the possession of the goods had never been changed, and S. might still enforce upon them his lien as vendor. Lord CAMPBELL puts the decision upon the ground, not of a right to stop *in transitu,* but that the owner had never parted with his possession; that a delivery order was insufficient for that purpose, and that it was not equivalent to a bill of lading indorsed over for value. In this view the Lord CHANCELLOR and Lord BROUGHAM concur. (*See, also, Ackerman* agt. *Humphrey,* 1 *Carr. & Payne,* 53, *and Jenkyns* agt. *Usborne,* 7 *Man. & Gr.* 678.)

In *Hollingsworth* agt. *Napier,* (3 *Caines' Rep.* 182,) the marginal note states a rule at variance with this proposition. But it will be found that the purchaser, who had a bill of parcels and delivery order, went to the quarantine with it, had the

goods turned out to him, and the bales marked with his own initials. It being too late in the day to ship them to the city, he paid the storage and returned them to the public store. SPENCER, Justice, said, " The plaintiff having, as it must be intended, fairly got possession of the order for the cotton, received a delivery of it, and paid the storage. This acquiring of possession took away defendant's right to stop *in transitu.*"

The plaintiffs are entitled to judgment, as prayed for in their complaint.