Mason et al v. Wilson et al.

---

MASON ET AL v. WILSON ET AL.

1. STOPPAGE IN TRANSITU : *When the right of ends:*
   The right of the unpaid vendor of goods to stop them *in transitu*, upon the bankruptcy or insolvency of the purchaser, is not defeated by their mere arrival at their destination. The *transitus* is not at an end until they have come to the vendee's actual possession, or to his constructive possession by delivery to his agent; and *a fortiori* the right may be exercised where the purchaser declines to receive them.

2. COMPROMISE ; *As consideration for contract.*
   A compromise of a disputed claim, however void of merit or foundation, is a sufficient consideration to support an express promise for its settlement.

Mason et al v. Wilson et al.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.

*Cohn & Cohn* for appellants.

I. *a.* When a suit is *bona fide,* brought on probable cause, a promise to compromise is a valid consideration. 1 *Chitty on Cont.* 46 (16 *Am. Ed. and note m.*); 1 *Whart. on Cont., Secs.* 533 *and* 193 ; 29 *Ark.,* 131 ; 21 *Ib.,* 69 ; 17 *Am. Dec.,* 118 ; 6 *T. B. Monroe,* 91 ; 9 *La.,* 397 ; 29 *Am. Dec.,* 448 *and note p.* 452 ; 45 *Ib.,* 257 ; 2 *Douglass,* 344 ; *Pollock on Cont. p.* 396.

*b.* An erroneous deduction of law is no cause for annulling the contract. 5 *Am. Dec.,* 626 ; 2 *Bibb,* 448.

*c.* Nor where parties are ignorant of their rights, will courts refuse to enforce. 26 *Am. Dec.,* 52 ; 1 *Watts,* 163.

II. Indeed it is doubtful whether the Wilsons could ever have enforced the contract, if M. & T. had chosen not to observe it, for they had no kind of title to the butter. 1 *Whart. on Cont., Sec.* 532-3

III. *a.* If this is a bailment, the appellees are estopped to deny title, unless they can show that they turned the butter or its proceeds over to a third person and that such person was the owner. *Whart on Ev.,* 1149, 36-34-5 ; *Edwards on Bailments p.* 62-3, 295, 305, 306, 535 ; 14 *Mich.,* 392 ; *Bigelow on Estoppel,* 2d Ed., p. 387 *et seq; Stephens Dig., Law of Ed. (Eng. Ed.) Art.* 105p. 127.

*b.* If not a bailment, but the Wilsons obtained possession from appellants, the same doctrine applies. Cases *supra* and 23 *Am. Dec.,* 407 ; 7 *J. J. Marsh,* 318 ; 9 *Vt.,* 37 ; 31 *Am. Dec.,* 605 ; 9 *Porter* 434 ; 33 *Am. Dec.,* 324 ; 101 *Mass.,* 193.

*P. C. Dooley* for appellees.

A delivery of goods by the vendor to the carrier is a delivery to the vendee and the title vests, subject only to the right to stop in transit. This right exists only so long as the goods are in the hands of the carrier *as carrier*, and actual or constructive delivery to the vendee or his agent puts an end to the right. *Hutchinson on Carriers, Sec.* 421, 417; *Benjamin on Sales, Sec.* 838; 29 *Am. Dec., note p.* 309 ; 105 *Mass.*, 272; 57 *N. H.* 454 ; 17 *Am. Dec.,* 319 ; *Benjamin on Sales, Sec.*, 849, 854 *and p.* 390-1; *Ib., Sec.* 841–848.

The full and complete right of property was then in Mayfield from the moment they were delivered to McLean, and they were attached as their property, and no compromise of M. & T. or promise on Wilson's part to pay over proceeds after paying his debt, could divest the attachment liens, or relieve Wilson from paying Mrs. Traylor her debt to the extent he was garnished for, and that he had in his hands. There was no essential element of estoppel in the case, *Bigelow on Estoppel, p.* 480, and no deception, fraud or collusion on Wilson's part.

SMITH, J. Mayfield Bros., merchants of Little Rock, had purchased of Mason & Trusdell, of St. Louis, a lot of butter of the value of $109.52, but had not paid for the same. The butter was shipped by rail, consigned to the vendees ; but before it was delivered to them they failed in business and sent the following telegram to Mason & Trusdell : "Little Rock, Ark., Dec. 6, 1882. Business suspended. Goods at depot. Telegraph orders to agent. Mayfield Bros." Meantime, one McLean, a transfer agent at Little Rock, under a general authority previously given him by Mayfield Brothers to receive all goods consigned to them, took it upon himself to transport the butter from the depot to their place of business. And finding the store closed, he deposited it at a certain ware-

house in Little Rock, where an attachment was immediately levied upon it as the property of Mayfield Brothers, at the suit of W. T. & R. J. Wilson. Mason & Trusdell thereupon brought replevin against the constable for the butter and obtained judgment against him; but afterwards made an arrangement with the Wilsons by which the butter was turned over to them upon an understanding that they were to account to Mason & Trusdell for its value, less the amount of the claim of the Wilsons against Mayfield Brothers, say $50. However, before the excess in the hands of the Wilsons had been paid over, another creditor of the Mayfields had caused a writ of garnishment to be served upon them to answer what effects of the Mayfields they had in their hands. And thereafter such proceedings were had that judgment was rendered against the garnishees for this surplus of $59.52. The Wilsons then refused to account to Mason & Trusdell for this sum; and the last mentioned firm sued them before a Justice of the Peace for the value of the butter and recovered judgment for $109.52. But on appeal to the Circuit Court the cause was tried *de novo* before the court, a jury being waived, when the foregoing facts were developed in evidence. The plaintiffs claimed judgment for $59.52 according to their agreement for compromise with the defendants. But the court decided that the right of stoppage *in transitu* had been lost; that the butter was the property of Mayfield Brothers, when the writs of attachment and garnishment were sued out and served; and gave judgment for the defendants.

The right of the unpaid vendor to stop goods *in transitu*, upon the bankruptcy or insolvency of the vendee, is not defeated by the mere arrival of the goods at their destination. The *transitus* is not at an end until they have come to the vendee's actual possession, or his construct-

1. Stoppage *in transitu*. When right of ends.

ive possession by a delivery to his agent, *Benjamin on Sales*, 651; *Whitehead v. Anderson*, 9 *M. & W.* 518; *S. C. Tudors Lead. Cas. Mer. Law* \*632 *and notes*; *Jackson v. Nichol*, 5 *Bingh. N. C.* 508 (35 *E. C. L. R.*, 202); *Crawshay v, Edes*, 1. *B. & C.*, 181 (8 *E. C. L. R.*); *Mottram v. Heyer*, 5 *Denio*, 629.

*A fortiori* the right may still be exercised where the purchaser declines to receive the goods. Thus in *James v. Griffin*, 2 *M. & W.* 623, the buyer, knowing himself to be insolvent, determined that he would not receive a cargo of lead that he had not paid for, but on its arrival at the wharf, where he had been in the habit of leaving his lead with the wharfingers as his agents, it became necessary to unload it, in order to set the vessel free. He therefore told the captain to put it on the wharf, but did not tell the wharfingers of his intention not to receive the lead; and they probably deemed themselves his agents to hold possession. After this the goods were stopped. Parke, Bolland and Alderson. B. B. (Abinger C. B. dissenting) held the *transitus* not ended and that the buyer's intention not to receive being proved, the wharfingers could not receive as his agents without his assent. See also *Atkin v. Burwick*, 1 *Strange*, 165; *Bertram v. Farebrother*, 4 *Bing.* 579 (13 *E. C. L. R.*); *Bolton v. Lancashire & Yorkshire R'y Co.*, *L. R.* 1, *C. P.* 431.

But the present case goes one step beyond this. "Where the buyer has become insolvent after his purchase, he has a right to rescind the contract with the assent of his vendor, while the goods are still liable to stoppage; and then the subsequent delivery of the goods into the buyer's possession cannot affect the vendor's rights, because the property in the goods will not be in the buyer." *Benjamin on Sales*, 652.

Here both parties to the contract of sale have by mu-

tual consent rescinded it. The buyer has said, In honesty the butter ought to go back, as I cannot pay for it; and he sends a telegram to the vendor signifying his willingness that it should get back to him, if by law it might. No creditor of Mayfield Brothers had then acquired any specific lien upon it, and there is nothing in our law which prevents an insolvent debtor from preferring one creditor to another. *Salte v. Field*, 5 *Durnf. & E.*, 211; *Nicholson v. Bower*, 1 *E. & E.*, 171 (102 *E. C. L. R.*); *Heirnkey v. Earle*, 8 *E. & B.*, 423 (92 *E. C. L. R.*) *Ash v. Putnam*, 1 *Hill*, 302; *Naylor v. Dennie*, 8 *Pick*, 198; *Grout v. Hill*, 4 *Gray*; *Clemson v. Davidson*, 5 *Binn.*, 392.

The butter, then, was the property of Mason & Trusdell, and not of Mayfield Brothers, at the date of the service of the attachment and garnishment. And they might have recovered the whole of it, or its value. But to avoid litigation they have agreed that the Wilsons might deduct their debt of $50 against the Mayfields out of the proceeds of its sale. And the compromise of a disputed claim is a sufficient consideration to support an express promise, although there may have been no merit or foundation for such claim. *Richardson v. Comstock*, 21 *Ark*, 69; *Snow v. Grace*, 29 *Id.*, 131; *Livingston v. Dugan*, 20 *Mo.*, 102.

True, the Wilsons have not performed their part of the agreement. But the reason for that was the service of the writ of garnishment and the subsequent judgment that the surplus in their hands be paid to the attaching creditor.

These proceedings and orders do not affect the plaintiffs, as they were no parties to them. But they explain the conduct of the defendants in not paying the surplus to Mason & Trusdell, until legally compelled to pay.

And their right to retain their own debt due from May-field Brothers is not forfeited by their conduct.

Reversed and remanded for a new trial.