JACOBS v. BENTLEY.

Opinion delivered May 4, 1908.

1. APPEAL—INSUFFICIENCY OF ABSTRACT.—Instructions given by the trial court will not be considered on appeal if appellants neglect to set them out in their abstract or brief. (Page 188.)

2. ADMINISTRATION—COLLATERAL ATTACK UPON LETTERS.—Where the record of the appointment of an administrator is regular upon its face, the validity of such appointment cannot be impeached upon collateral attack by showing that at the time of his appointment the administrator was not a resident of the State. (Page 188.)

3. SALE OF GOODS—WHEN RIGHT OF STOPPAGE ENDED.—While a vendor's right to stop goods *in transitu* is not defeated until they have come into the vendor's actual possession or into his constructive possession by a delivery to his agent, yet when the vendee dies and his administrator takes possession, the transit is terminated, and the vendor's right of stoppage ended. (Page 189.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed.

*Manning & Emerson,* for appellants.

1. The *transitus* is not ended until the goods have come into the vendee's actual possession, or into that of his authorized

agent. 43 Ark. 172. Appellant's right to rescind the sale could be exercised as well because of Seay's death as because of insolvency. 3 L. R. A. 647; 3 Pac. 396; 19 N. W. 410.

2. Atkins was a non-resident of this State, and could not serve as an administrator here; but, if competent to serve, there was no authority of law for Renfro's subscribing Atkins's name to the affidavit and petition for appointment. The clerk's act in issuing the letters of administration was a nullity, and the letters isued were void.

*Thomas & Lee,* for appellee.

The *transitus* was at an end. No effort to stop the goods *in transitu* was made until after the goods had been carried to their destination by the railroad company, by it delivered on the order of Seay to his agent, Capt. Wofford, and by him taken and delivered at Indian Bay; and no effort was then made until after appellant Garrett went to Indian Bay, where he found the goods in the store house of deceased, and an inventory being taken. 44 Ark. 556; 51 Ark. 133; 54 Ark. 307; 38 Ark. 614; 50 Ark. 20; 83 Ark. 426; 23 Am. & Eng. Enc. of L., 909, 911. Moreover, the subsequent delivery to the administrator occurred before any effort was made to stop the shipment.

2. The probate court is vested with a potential jurisdiction over the estate of a deceased person from the happening of the death of that person. It has exclusive power to grant letters of administration, and its clerk has the power in vacation to issue such letters, subject to its confirmation. The granting of letters in this case could not be attacked collaterally. If erroneously issued, the remedy was by appeal. 19 Ark. 50; 10 Ark. 549; 19 Ark. 515; 44 Ark. 500; 45 Ark. 269; 46 Ark. 375; *Id.* 467; 57 Ark. 14; 64 Ark. 132.

HILL, C. J. John Seay was a liquor dealer at Indian Bay, Monroe County, where he died on the night of the 31st of August, 1903, intestate, leaving personal property at that place. On the 20th of August he had bought a bill of liquors of the appellants, Jacobs & Garrett, liquor merchants of Memphis, Tenn., and they shipped the goods in due course of business, routed to Clarendon, Ark., where they were delivered by the agent of the railroad company, who had authority for that pur-

pose from Seay, to a steamer plying on White River, and were carried by the steamer to Indian Bay. They were delivered to the steamer on August 31st, about nine o'clock in the morning, and reached Indian Bay on the morning of the 1st of September. The steamboat captain then learned of the death of Seay and put the goods on the wharf at the usual landing place, except one barrel of whiskey, which he kept for his freight charges. After keeping this for some two weeks, he delivered it at Seay's late place of business.

The railroad agent at Clarendon wired to Jacobs & Garrett of the death of Seay, and they wired back to stop the goods in transit, but before their telegram was received the goods had been delivered to the boat and gone to Indian Bay, and no message reached the carrier to stop delivery. Garrett came to Indian Bay shortly afterwards to investigate, and found the goods in the possession of one Renfro, who was acting for one Atkins, who had been appointed administrator of Seay's estate by the probate clerk in vacation on the 3rd of September, which appointment was later confirmed by the probate court in term. Garrett returned without taking any action in regard to the goods, and brought replevin on the 16th of October against the parties alleged to be in possession of them, including the administrator. He lost in the lower court, and brings the case here. There was testimony tending to establish the right of stoppage *in transitu,* if the right had been seasonably exercised.

Appellants criticize several of the instructions, but they do not set out the instructions in their abstract or brief, but proceed upon the theory that the court is familiar with the record, instead of making the court familiar with the record through their abstract. Under the well-settled practice of the court, such criticisms of the instructions do not present matters for review.

The principal attack is made upon the administration letters granted to Atkins. The proceedings were regular upon their face, and showed compliance with the statute in such matters. It was attempted to be shown that at the time of his appointment Atkins was out of the State of Arkansas, and was a non-resident of the State, and that Renfro made the application and bond and affidavit for him. The proceedings and record of the

probate court cannot thus be impeached in a collateral proceeding. *Hare* v. *Shaw,* 84 Ark. 32, and authorities there collated.

"The right of the unpaid vendor to stop goods *in transitu* upon the bankruptcy or insolvency of the vendee is not defeated by the mere arrival of the goods at their destination. The *transitus* is not at an end until they have come to the vendee's actual possession, or his constructive possession by a delivery to his agent." (Citing many cases.) *Mason* v. *Wilson,* 43 Ark. 172; 2 Mechem on Sales, § 1508-9.

"The transit, *ex hypothesi,* continues, and the right of stoppage may be exercised, until the goods have arrived at their destination, and have come into the actual or constructive possession of the buyer." 2 Mechem on Sales, § 1573.

When a man dies, "the probate court becomes vested 'with at least potential jurisdiction over his entire estate, which is put in actual exercise, if not before, at least upon the granting of letters testamentary or of administration.' Upon the granting of such letters, all his property, although the purchase money for the same may be unpaid, passes into the custody of the law, and becomes assets, a trust fund in the hands of his executor or administrator for the payment of his debts, subject to any liens or charges thereon or interests therein acquired by any other person in his lifetime." *Blass* v. *Hood,* 57 Ark. 13.

"As the successor of the vendee's rights upon his death, his administrator or executor may take possession, thereby terminating the transit and putting an end to the right of stoppage." 2 Mechem on Sales, § 1594.

The goods in question went into the hands of the administrator of the estate, and that administration, being *prima facie* regular, is impervious to collateral attack. The goods being in the hands of said administrator before the right of stoppage was attempted to be exercised, the title of the estate to them cannot be defeated in this action.

The case was tried upon this theory in the lower court, and it was right.

Judgment affirmed.