By the Court. Paine, J.
It appears in this ease, that the charter party was executed by J. B. Dowd, agent for Tremlett, and attested by a subscribing witness. It contained a stipulation, that “ freight should be payable at four dollars per chaldron, Pictou mines measure of 30 cwt., in approved acceptance of thirty days from the period of discharging the cargo, and twelve days allowed for discharging in New York.” At the foot of the charter party was the following direction in Dowd’s handwriting, to the master, to whom the charter party was delivered—“ On arrival at Pictou, you will address yourself to Mr. Henry Poole, the superintendent at the mines, who will be instructed to give you every possible dispatch.”
The vessel was loaded at Pictou in the usual manner. The coal was brought to the ship, from the mines, in cars unequally loaded, and the weight of the coal was not ascertained. The master signed a bill of lading containing the same stipulation as the charter party, and noted in the margin, “ weight of chaldrons unknown.”
By the bill of lading, the cargo was deliverable to Tremlett or his assigns ; and on the ship’s arrival at New York, the defendant Whitney’s house, of Soule, Whitney & Co., claimed to receive the cargo as the agents of Tremlett, and it was delivered to them. It turned out, that instead of four hundred chaldrons of coal, of thirty cwt. to the chaldron, there were nearly four hundred and sixty chaldrons.
After the delivery of the cargo, the plaintiff, who was owner of the vessel, presented a bill to Soule, Whitney & Co., for the freight of 458{- chaldrons of coal, with this note at the foot: “ Satisfactory acceptance at thirty days, from Nov. 8th, 1841,” (the time of the delivery.) Soule, Whitney & Co., declined to *402 settle the bill, but said they were ready to pay in cash (deducting interest for the thirty days) for four hundred chaldrons, at four dollars, and when urged by the plaintiff to settle, they refused to settle upon any other terms. The plaintiff then said he would attach a cargo belonging to Tremlett; and Soule, Whitney & Co., replied, “We have to settle only for four hundred chaldrons at four dollars each.” The plaintiff then began his attachment proceedings, before the thirty days had expired.
The defendant Whitney, who was examined by the plaintiff on the trial, stated that he knew the terms of the charter party; that he. received it inclosed in a letter addressed to him by Tremlett ;• and that the terms of the charter party were discussed between him, and the plaintiff. The defendants’ counsel did not raise the question at the trial, whether the charter party received by Whitney, was in any respect different from, that delivered to the captain of the ship, and offered in evidence on the trial by the plaintiff.
The captain of the vessel, who was the plaintiff’s principal witness, was, during the whole of the voyage, entitled, under an agreement with the plaintiff, to an eighth of the vessel, on his paying for it, but the vessel was held by the plaintiff, under a bill of sale to himself, and stood in his name alone. The captain, however, shared in the profits and losses of the vessel up to the period when he decided not to become an owner, which was not until after this voyage was wound up. On the trial, the captain executed a release to the plaintiff to remove the objection of interest, but the defendants still insisted, that he should, on account of his interest in the vessel, have been joined as a co-plaintiff in the action and proceedings under the statute.
The defendants’ counsel also insisted on the trial, that the charter party was not sufficiently proved, without proof of the handwriting of the subscribing witness, who resided in London. He also objected, that the proceedings were instituted before the expiration of the thirty days; that the bond declared upon was void, because it was executed by Tremlett’s agent with only one surety; and that no evidence should have been received, *403 showing the actual weight of the coal, the parties being bound by the Pictou chaldron, as per bill of lading. And upon all these points which were ruled against him, the defendant took exceptions.
We do not think there is much intrinsic difficulty about any of these objections. The master was never the legal owner of this vessel. He had an interest in her, under a contract with the plaintiff to become the owner of an eighth part whenever he should pay for it. In the mean time the vessel was run for their joint account, but entirely subject to the plaintiff’s control as owner. It is a transaction of the most ordinary occurrence, and in which the real owner always acts, and is regarded, as a trustee for the person who has a right to become the purchaser. It is true, that one may be a legal owner of a vessel without written evidence of ownership; and it is equally true, that one may be only equitably interested and yet have full evidence in writing of his interest. It is the nature of the interest, and not the evidence of it, which determines whether he is legal owner. There ' is no difference in this respect between property in ships and other property. In this case the master had merely an equitable interest under a contract, and, by the rules of pleading, should not have been made a co-plaintiff.
It is a well settled rule of evidence, that a party must object to the competency of proof at the first opportunity; and, when a paper is attempted to be proved by a witness, whose deposition is taken before the trial, any such objection to the proof should be made at the time of taking the deposition. In this case, Webster, the master, was examined some months before the trial, and proved the execution of the charter party by Tremlett’s agent. No objection was then made to the sufficiency of the proof, or that the paper should have been proved by the subscribing witness. This precluded the defendant from raising the question at the trial. But, independently of this, the charter party was not an instrument executed and laid aside, merely as evidence of the rights of parties. At the bottom of it were written directions from Tremlett’s agent to the master, for his government, and which the witness did not subscribe. In this state, the charter party was- delivered to the masterand the *404 cargo was expressly received and delivered under it; and the agents of Tremlett, as well as the master, regarded it, and acted under it, on all occasions, as the contract between the parties. Under such circumstances, it would be but a perversion of a rule of evidence to require, that it should be proved by the subscribing witness.
The conduct of Tremlett’s agents in Hew York, when called upon for a settlement, whether we regard it as a refusal to perform the contract, or as a waiver of the thirty days credit, discharged the plaintiff from the necessity of waiting for the expiration of the thirty days, before he commenced his proceedings. If Tremlett’s agents, who 2’eceived the cargo, had no authority to give the acceptance, as the defendants insisted at the trial, then there was so much the more reason for the plaintiff’s being allowed to proceed at once.
As to the objection that the bond was signed by only one surety, the language of the statute is, that the bond shall be executed by the non-resident debtor or his agent, “with such sureties as shall be approved.” The plurality of sureties is for the benefit of the creditor, and he may dispense with more than one, without invalidating the bond.
The point to which most importance seems to have been attached by the defendants, is that by the terms of the charter party, the plaintiff was bound to receive the coal as four hundred chaldrons, Pictou mines measure of thirty cwt., because Tremlett’s agent delivered it to him as such; that the expression in the charter party “ thirty cwt.” was mere surplusage; and that he had no right to have the weight of the chaldrons ascertained. This is the defendants’ view, so far as we have been able to understand it. We think, on the contrary, that the thirty cwt. is a very material expression in the contract. It is a defining and restraining clause, and has very much the appearance of having been inserted at the master’s desire or suggestion, either from a knowledge of the way in which vessels were loaded at the mines, or from a distrust of the uncertain meaning of the word chaldron. Its importance in this case appears from the fact that about an eighth more cargo was put on board the vessel under the contract, than was agreed for.
*405 The plaintiff was entitled to be paid four dollars for every thirty hundred weight. There is nothing in the charter party which makes the measuring or weighing at Pictou conclusive upon the parties. It appears, in point of fact, that it never was measured there with any accuracy, and never was weighed at all. But had it been, there is no reason why any mistake or inaccuracy should not have been afterwards corrected.
The motion for a new trial must be denied.