By the Court. Woodruff, J.
It is not claimed that, (if the right of stoppage in transitu existed on the 14th day of June, 1854, when the plaintiffs demanded the goods,) the demand made by the plaintiffs and the notice thereof were not a proper and sufficient exercise of that right to entitle the plaintiffs to take the goods and to recover in this action.
The defendants denied the right, and afterwards paid the freight and duties, and took possession of the goods, but this was not only after the rights of the parties had been fixed by the demand and refusal, but after this suit was brought. The case must, therefore, be disposed of according to the rights of the parties on the 14th of June, when the demand and refusal took place; and the great question in controversy is,
Had the plantiffs, when the goods were demanded, the right to stop the goods ?
This question involves two inquiries—
1st. Did the plaintiffs’ right, as vendors, to stop the goods, terminate at Liverpool, when the goods were received by the firm of Edwards, Sandford & Co. ? or if not then, 2d. Did it terminate at New York before the plaintiffs demanded the goods ?
*614 The general principle which defines the right of the vendor who has sold goods upon credit to a vendee who becomes insolvent or bankrupt to stop the goods, is not controverted. It appears to have been first recognized as an equitable right in the English Court of Chancery, in 1690, (Wiseman v. Vandeput, 2 Vernon, 203,) and afterwards in the same court, in 1743, (Snee v. Prescot, 1 Atk. 248-9,) by Lord Hardwicke, and soon after it was sanctioned at law as a strictly .legal right, though founded in equitable principles, and has ever since been so regarded. (See Mason v. Lickbarrow, 1 H. Bl. 357, and cases cited, p. 365, etc., and in notes.)
The limitation upon the above definition requires that the right be exercised while the goods are in the hands of a carrier or middleman in their transit to the consignee or vendee, and before they come to his actual possession, or as defined by Story, “ while in the hands of some intermediate person between the vendor and vendee in process, and for the purpose of delivery.” (Story on Sales, § 319.)
The application of this principle would, at first view, seem free from great difficulty, but the course of decision in England shows that the rule was soon qualified by an inquiry as to what circumstances should be deemed equivalent to actual possession by the vendee, which at the same time involved the inquiry what, under given circumstances, was-to be deemed the destination of the goods, and when the transitus should be deemed at an end ?
And it is a matter of some ‘interest to observe, that although the courts in England characterize the right as one highly equitable in its nature, and as regarded with favor in courts of law, they have at the same time been restricting its operation and rendering it less and less beneficial to the vendor.
In very early cases, Lord Mansfield not only held that a constructive possession by the consignee by actual delivery to his special agent did not defeat the right of the vendor to stop the goods, but that there must be an actual delivery to the consignee himself; and again, that the goods must have come to the corporal touch of the vendee, (Stokes v. Le Riviere, 1784; Hunter v. Beale, 1785, cited in 3 J. R. 466, and in many subsequent cases,) and Lord Kenyon says, in Wright v. Laws, (4 Esp. 85,) that he once so stated the rule. But as will be seen by cases below cited, the necessity of their either coming to the consignee himself or to *615 his corporal touch was soon after repudiated, and has since been very uniformly denied.
So, in the same case of Hunter v. Beale, the exercise of acts of ownership over the goods by the vendee, while they remained in the hands of the innkeeper to whom they were sent by the vendor directed for the vendee, was held by Lord Mansfield not to defeat the right.
And in 1795, it was held that, when the goods arrived in the vendee’s ship, at the port of delivery, and his assignees took possession of the ship, but she was ordered to quarantine without coming to her wharf, the vendor might stop the goods while she was lying at quarantine, (Holst v. Pownal, 1 Esp. 240,) Lord Kenyon saying, “ that the possession which will defeat the right must be a possession at the completion of the voyage.”
But in Wright v. Laws, (4 Esp. 82,) the same learned Judge held it sufficient to defeat the right if the vendee has exercised acts of ownership over the goods—as by calling at the warehouse and taking samples—and in a previous case, (Ellis v. Hunt, 3 J. R. 464,) in 1789, it was held sufficient, if a vendee, or his assignee in bankruptcy, went to the inn at which the goods had arrived, and demanded them, and they not being delivered, put his mark upon them.
In Hodgson v. Loy, (7 T. R. 440,) delivery by the vendor to a carrier, and by him to a wharfinger at an intermediate place, without any instructions from the vendor to forward the goods, was held not to take away the right; the wharfinger being under general orders from the vendee to forward goods received for him to London. (See also Smith v. Goss, 1 Camp. 282.)
In 1801 it was held, that delivery to a wharfinger at an intermediate place, who received them on account of the vendee, and paid charges thereon, debiting them to the vendee, did not defeat the right of stoppage, though the wharfinger was under no orders to forward except so far as they might be implied from their acceptance, they being consigned to the vendee. (Mills v. Ball, 2 Bos. & Pul. 457.)
But in Richardson v. Goss, (3 Bos. & Pul. 119,) the court intimate, that delivery at a wharf at the place of destination to the wharfinger, who had, before their arrival, received directions from *616 the. vendee to receive 'them from the carrier, terminated the right of stoppage.
The right of stoppage was also held to be lost where goods were purchased for a vendee living in Paris, and were consigned to his agent in London, who sent them to a packer to be re-packed, and some of the goods had been unpacked and sent away by such agent, (Leeds v. Wright, 3 Bos. & Pul. 320 ;) but it is to be observed, that in this case the agent had authority not merely to forward the goods, but had a general authority over the goods to send them to such market as he might deem advisable. And to a similar effect is Scott v. Pettit, (ib. 469,) where under a general direction to the innkeeper to, send all goods directed to the vendee (at London,) to a packer’s, the goods were so sent, and there unpacked.
And to the like effect is Foster v. Frampton, (6 Barn. & Cress. 107,) where, on arrival at the carriers’ warehouse at the place of destination, the vendee removed part of the goods, took samples of the residue, and requested the carrier to suffer them to remain there till further orders.
Taking samples was deemed a complete act of ownership, and the right terminated by the vendee’s treating the goods themselves as his own property.
Other acts of ownership are held to defeat the right; see Withers v. Seys, (Holt, 18,) and review of cases in the note to that case, (3 E. C. L. R. 10,) and Swanwick v. Southern, (9 Ad. & El. 817.)
In Inglis v. Underwood, (1 East. 515,) it was held, that the delivery of the goods on board a ship chartered by the vendee to bring the goods home to himself, put an end to the right. This was in direct conflict with Holst v. Pownal, above referred to, and in Botlingk v. Inglis, (3 East. 381,)’the contrary is distinctly held.,
While, on the other hand, a delivery on board a vessel chartered by the vendee, to be sent abroad on a trading adventure, is deemed to destroy the right of stoppage. (Ib., and Fowler v. McTaggert & Co., there cited.)
These cases, notwithstanding some contradictions, tend to this result, that a merely constructive delivery, though sufficient to entitle the vendor to demand the price of the goods, and to place the goods, at the vendee’s risk, does not alone defeat, the right pf stoppage.
*617 That while the goods are in course of transportation to the place of destination, or are in the hands of an intermediate agent or warehouseman for the purpose of being forwarded, they are not subject to this right.
That after their arrival at the place of destination, and while in the hands of the carrier, or a wharfinger, or a warehouseman for the mere purpose of delivery to the vendee, the vendor may resume the possession.
That delivery to the vendee’s special agent on board the vendee’s own conveyance, or a conveyance chartered by him, if the purpose of the delivery is transportation to the vendee, does not defeat the right.
But that the right is lost if the vendee received actual possession ; or if after their arrival at the place of destination he exercise acts of ownership over the goods; or if his agent, having authority and power of disposal, exercises like acts.
As if the goods are by order of the vendee or such agent sent to a packer, or to the warehouse of a third person, or are charged on the books of the warehouseman at whose warehouse they arrive, so that he undertakes to keep them, subject to the orders of the vendee. (Hawes v. Watson, 2 Barn. & Cress. 540; Withers v. Sey, Holt, 18; Swanwick v. Southern, 9 A. E. 895; Harman v. Anderson, 2 Camp. 243.)
A course of decision originated in the case of Dixon v. Baldwin, (5 East. 175,) although it is by no means necessarily involved in the facts contained in the statement of that case, which bears more closely upon the case under consideration, and which may be said to have resulted in the decision of Valpy v. Gibson, (4 Man. Gr. & Scott, 837,) upon which the defendants here now mainly rely.
It was held, in Dixon v. Baldwin, that the arrival of the goods to the possession of agents, for shipment, who held them awaiting the orders of the vendees, terminated the right of stoppage, and the language of Lord Ellenborough furnishes the argument used in the subsequent cases, and relied upon in the present, viz.: “ The goods had so far gotten to the end of their journey that they waited for new orders from the purchaser to put them again in motion, to communicate to them another and substantive destination, and that without such orders they would continue stationary." But it should be noticed that the vendors there resided at Man- *618 Chester, the vendees at London. The goods were ordered to be sent to the agents of the vendees at Hull, and though “for Hamburg,” yet the agents had no orders when nor to whom to send the goods, but, as testified, held the goods for the vendees and at their disposal, and accordingly Le Blanc, J., gives as a reason for his opinion that “until the agents received directions from the vendees they did not know where to send the goods.” The goods were not in the hands of the agents for the purpose of being sent or delivered to the vendees, but to be shipped from them, and to whom was not yet known.
Without pausing here to consider how far this case conflicts with the decisions of our own courts, it is proper to say that the facts proved there are very materially different from those disclosed in the present case, where the agents received the goods for shipment to the vendees themselves, at the place designated to the vendors at the time of the purchase, and held them for no other purpose, awaiting merely directions which should designate the time of shipment.
This case was followed by Rowe v. Pickford, (8 Taunt. 83,) which held the right of stoppage at an end, when goods, ordered from Manchester by a vendee in London, arrived at the wagon office of the carrier in London and on notice to the vendee, he having no warehouse, his clerk went to the wagon office, (where goods sent to the vendee always remained till shipped,) and saw the goods, and informed the warehouseman that he should give an order to the vendee’s shipping agent to come for them as usual. Of this case it may be remarked that the ground of decision is, that by the uniform course of business, the vendee bad made the warehouse his own, and the acts of his clerk amounted to an actual acceptance of the goods and a deposit there for safe keeping; and, what is very important, no other destination than London was ever communicated to the vendor or contemplated by him, and the decision in Groning v. Mendham, (1 Stark, 299,) where the vendor shipped the goods “to the order of the vendee,” and delivered him the bill of lading, proceeds upon this latter view of the subject.
Accordingly, where goods were purchased by commission agents at Manchester, for a house at Lisbon, and the vendors at Manchester delivered the goods to the agents for the purpose of *619 being forwarded, the goods were held liable to stoppage so long as they remained at the warehouse of such agents. (Coates v. Railton, 6 Bem. & Cres. 422.)
This case is not unlike some others above cited, but the three more recent cases above referred to, were discussed, and the general principle reasserted, that where goods are sold to be sent to a particular destination named by the vendee, the right of the vendor to stop them continues until they arrive at that place of destination. The suggestion that the time or mode of shipment not being fixed made any difference, does not appear to have occurred to the court; and, after reviewing the cases, it is added, “the principle to be deduced from these cases is, that the transitus is not at an end until the goods have reached the place named by the buyer to the seller as the place of their destination.”
It is difficult to perceive, if the mere fact that the goods are awaiting the directions of the vendee, as to the time or mode of conveyance, affects the right of stoppage, why the full possession of an agent clothed with authority to determine in future where and how the goods shall be sent should not have the same effect. And that the mere fact that the goods await the vendee’s orders for disposition even, (which is much stronger in favor of the vendee than where the orders required relate only to the time or mode of shipment to the vendee,) does not defeat the vendor’s right, is held in Tucker v. Humphrey, where the uniform course of business of the vendee with the carrier was, that the latter retained goods sent to the vendee on board ship or on his wharf until the vendee sold them, and yet they were stopped on board the ship while awaiting orders. And the court evidently entertain the doctrine that where the person to whose possession the goods have come is acting merely as a means of conveyance to or on account of the vendee in a course of transit towards him, the right of stoppage is not lost. (4 Bing. 516.)
Goods in the hands of the middleman are, hi one sense, always subject to the orders of the vendee, as well before as after arrival at their place of destination. He may take possession of the goods, and he may, if he please, terminate the transportation at an intermediate place; or he may change the ultimate destination. But if, in fact, he has done neither, and the goods are held for the mere purpose of shipment to him, it is not apparent that the *620 existence of the right or power of the vendee nnexercised, and while the purpose to ship to the destination named to the vendor continues, ought to affect the right of the latter. And that such right is not so affected, if the time and mode of shipment be in the discretion of the agent to whose care the goods are sent by the vendor, appears to have been held in Nicholls v. Le Feuvre, (2 Bing. N. C. 81,) and, notwithstanding the qualifying dictum of Chief-Justice Tindal,, founded on Dixon v. Baldwin, the case of Jackson v. Nichol, (5 Bing. N. C. 508,) seems even stronger to this effect.
The question before us, then, becomes an exceedingly narrow one; goods are purchased for a specified destination, named to the vendors at the time of the purchase, and that destination is the place of business of the vendees. Eor the single purpose of being shipped to that destination the vendors send the goods to the vendees’ shipping agents, who, during a long course of dealing, had been in the habit of receiving and forwarding goods to the vendees. The destination remains unchanged. The vendees not only do nothing to change the condition or destination of the goods, but their very purpose for which the goods were bought remains unaltered. The goods have neither become the subject of any new adventure by the vendees nor the basis of any new credit with third persons. If such shipping agents were clothed with a general discretion as to the time and mode of shipment, the right of stoppage in transitu would continue until and after such shipment. Does the fact that, as respects the time of shipment, (for that appears to have been all that was left for the orders of the vendees, as the parties contemplated and treated the present transaction,) the agents were to await the orders of the vendee, defeat the right ?
Chief-Justice Tindal, in the case last above cited, remarks, as the doctrine of Dixon v. Baldwin, that “if the goods had been delivered to an agent of the vendee to remain till he received orders for their ulterior destination, the right to stop would have been at an end.” The case of Dixon v. Baldwin has been already noticed above, and it may be added of this remark, that if “ orders for their ulterior destination” is taken to mean, for disposal as the vendees might order, then the dictum does not bear upon the question above stated. In such case it could not be said that they were purchased or delivered by the vendors for any other desti *621 nation. It must, however, be conceded that the language of the court in the modern English cases go very far to sustain an affirmative answer to the question above proposed, and yet no one of the cases themselves necessarily involves such an answer.
The three recent cases, much insisted upon by the defendants’ counsel, are Dodson v. Wentworth, (4 Man. & Gr. 1080,) Wentworth v. Outhwaite, (10 Mees. & Wels. 436,) and Valpy v. Gibson, (4 Man. Gr. & Scott, 837).
In the first of these cases it was held, that when goods arrived at the place designated in the bill of lading, and were delivered by the carrier to the warehouseman, a third party who was in the habit of receiving goods for the vendee, and holding, at his risk, without charge, till fetched away by the vendee or delivered to others upon the vendee’s orders, the vendor’s right of stoppage ceased on such delivery to the warehouseman.
In this case, the goods reached the destination to which they were ordered at the time of the purchase, and no other destination appears to have been named to the vendor, or to have been contemplated by him. The course of business proved did not indicate that the goods were to be forwarded any further; the warehouseman held subject to the orders of the vendee as to delivery to any persons whom he might designate; under the circumstances, the court regard the usage of the vendee as making the warehouse his own,, and delivery there, therefore, as effectual as if the delivery had been in his own warehouse. The court regard the case as falling within the principle of Dixon v. Baldwin, already commented upon. In Wentworth v. Outhwaite, (10 Mees. & Wels. 436,) the facts were substantially the same as in Dodson v. Went-worth, with the additional circumstance that the- vendee had actually taken away a portion of the goods.
The case of Valpy v. Gibson is, in some of its features, very nearly identical with that now under consideration; some grounds of discrimination may be stated, though it cannot be denied that the opinion expressed by the court is adverse to the claim of the present plaintiff. They seem inclined to hold, that if the agent to whose hands the goods come cannot forward without further directions from the vendee, the transitus is at an end when the goods are received by him, although purchased for another destination gnd expressly forwarded by the agent to be shipped.
*622 In that case, however, goods were purchased by Brown, living in Birmingham, for the Valparaiso market, and the vendors, in accordance with Brown’s directions, sent the goods to L. H. & Oo. of Liverpool, and on the same day advised L. H. & Co. that they were for shipment to Valparaiso, and requested them to put certain patterns on board with the goods, and “ see that they are properly directed as Mr. Brown of Birmingham may direct the same to be shipped.”
Had the case stopped here, it would have differed very slightly from the present. The only variation being, that in this case the goods were on their way to the vendee, while in that, they were on their way from the vendee to a foreign market. And the court clearly intimate the opinion, that upon these facts alone the transitus ended when the goods were received by L. H. & Co., the shipping agents.
But the further facts in that case, upon which, in connection with those stated, the decision was really based, create a most material difference, and bring the decision upon the ground of an actual exercise of authority over the goods by the vendee, and, like many of the previous cases of that description, does not at all conflict with the plaintiffs’ claim here. After the goods had been put on board ship, another agent of the vendee (acting, as the court assume, under his authority) caused them to be re-landed and sent back to the vendors to be re-packed. This was deemed by the court an actual dealing with the goods as owner; it diverted them, for the time being, from the course of transportation, and brought the transaction within the ordinary case of goods sent to a packer’s for re-packing, as in Leeds v. Wright and Scott v. Pettit, above referred to, and “ this,” the court say, “ would certainly put an end to the transitus, even if it had not been determined, as we think it was, by the original delivery to L. H. & Co.”
It is undoubtedly true, that in the last three cases, though none of them necessarily called for any such proposition, the court seem not only to adopt the language of Lord Ellenborough, in which he deems the transitus at an end because “ the goods had so far. gotten to the end of their journey that they waited for new orders from the purchaser to put them again in motion, to communicate to them another substantive destination, without which orders they would continue stationarybut they seem to sanction the even *623 more restricted rule, that if any further orders from the vendee are necessary to put the goods in motion, the transitas is at an end, although the actual destination named to the vendor remains unchanged, and the agents receive the goods to be forwarded to the vendee at such place, and for no other purpose.
As already remarked, neither Dixon v. Baldwin, nor either of the cases referred to, called for any such narrow limitation upon the vendor’s right of stoppage, and it does not appear called for by any reason, or even by any rule of convenience. The right in question is constantly called an equitable one, and is declared to be entitled to favor. It is equitable, because a condition of things has arisen not contemplated by the parties at the time of the purchase, and which, if anticipated, would have prevented a delivery without payment. The vendee has not paid the price, and, therefore, as between him and the vendor, the equity of the latter to retain the goods is clear. The rights or equities of no third persons have intervened. Creditors who have not become such upon the credit of the goods, nor of the vendee’s possession, have no right in reason or equity to ask that the goods be applied to the payment of their debts; no one, therefore, is prejudiced by the recognition of the vendor’s right. It is sometimes characterized as an extension of the vendor’s lien upon the goods for the price or purchase-money. It is not apparent that the circumstance that the goods are temporarily stayed in their actual progress to the vendee at the place of destination in fact, until he shall give orders as to the mode or time of shipment, upon any view of what is equitable between vendor and vendee should affect the vendor’s right; and as to third persons, the circumstance can in nowise affect them.
The supposed rule concedes that if the shipping-agent is already clothed with authority to ship when the goods arrive, then his possession is to be deemed a part of the transit. And to say that, although he hold for that, and no other purpose, and does, in fact ship, in execution of the declared intent expressed to the vendor by the vendee, the vendor’s right is lost, because the agent was instructed to await orders touching the mode or time of shipment does not seem to “ regard with favor” the right in question, but rather to restrict that right withip limits more narrow than sensible pr just.
*624 If Edwards, Sandford & Co., the agents at Liverpool, had been clothed with a discretionary power to ship the goods to this port by any vessel they might think proper to select, but circumstances occurred inducing them to decline acting under that discretion, and being unwilling to make a selection, they had written to the vendees for specific instructions, it would hardly be contended that by this act of the agent the transitus was terminated, and yet, in the case supposed, the goods, until an answer was received, would have been awaiting the orders of the vendees, and requiring such orders to put them again in motion in exactly the same sense as in the actual case before us.
And again, if the goods had been sent to Edwards, Sandford & Co. precisely as they were, in fact, save only that the orders as to the time and mode of shipping the goods to New York which they were directed to follow were to come from the vendee’s agent to purchase in England and forward to this port, could it have been said, that by the arrival of the goods in Liverpool for shipment before these instructions were received from the agent the transitus was ended, and the right of stoppage gone ? And yet, looking to the actual course of dealing, and the intention of the parties, the case stated does not differ in principle from the present. Eor, although the instructions required for the guidance of Edwards, Sanford & Co. were to come from J. & J. Hall, of Nottingham, yet, in giving those instructions, they acted for Hall Brothers of New York in furtherance of the original design and purpose for which the goods were bought, and to carry that design into execution by forwarding the goods to their original and proper destination.
And, although it may be conceded that John Hall at Nottingham, being a partner, had legal power even to change the destiip ation of the goods, he not only did not do, nor attempt to do this, but his doing so would have been a departure frqm the understanding and arrangement by which the goods wete, in fact, bought for the New York house, and' it may be even a violation of duty to his partner in New York, and the reference to him for instructions, and the instructions he gave were, therefore, only in aid of the original design to forward to, the New York firm, in respect to whom, in giving the instructions, he may properly be regarded as their agent only.
*625 It has sometimes been said, in relation to this subject, that each case must depend upon its own peculiar circumstances, and involves the inquiry what was the intent of the parties and whether the vendor contemplated any further actual reduction of the goods by the vendee to his own possession, and by this view many of the above cases may be disposed of, where it appears that the agent held not for transmission to the vendee but for shipment from him, or generally for disposal as the vendee might direct; and, notwithstanding the language used in the recent English cases, and applied to a state of facts in material particulars different from the case before us, it is by no means clear that they would hold that the possession of the agents in the circumstances of this case terminated the transiius at Liverpool.
Delivery to the vendees, and at New York—named to the vendors at the time of the purchase—was in contemplation of the parties from the outset. That destination was impressed upon the goods in the very act of manufacturing. That destination was constantly the intent of the vendees. The agents at Liverpool held them only in furtherance of that design, and made the shipment in order to its accomplishment.
If, therefore, we had only the English cases to guide us to a proper determination of this cause, there are strong reasons for holding that the more liberal views found in the earlier cases should determine the case favorably to the plaintiffs’ claim. If it were otherwise, it should be remembered that the most recent cases are only binding upon us so far as we are satisfied that they truly exhibit the law as it was when English authorities ceased to be binding in this country.
Our attention is called to the very recent case of Briggs v. Barry, in the United States Circuit Court for the district of Massachusetts, etc., (2 Curtis, C. C. R. 249,) of which it is stated by counsel that the facts disclosed by the evidence were identical with the present case so far as the plaintiffs’ right to stop the goods for non-payment of the price was involved, and in which Mr. Justice Curtis held that the transitus was at an end when the goods were received by Edwards, Sandford & Co. in Liverpool. The case, as reported, does not show that the goods were, in that case, ordered for the Boston market, nor that Boston was at all named to the vendors as their destination, nor that the goods were sent to Edwards, Sandford & *626 Co. for shipment to Boston, awaiting only orders respecting the time or mode of shipment. On the contrary, the charge of the court to the jury seems to imply that the goods were sent to Edwards, Sandford & Co. “to await orders respecting their destination.” But if a more full detail of the facts proved would show a more precise correspondence, then we feel constrained to differ from the conclusion reached by the learned Justice of the Circuit Court. His opinion is briefly placed upon the authority of Valpy v. Gibson, above referred to, and although it would be matter of regret if in the two chief commercial states of the union a conflicting rule should prevail upon this subject, the views above expressed, even without the decisions in our own state, to be presently noticed, which are binding upon us, lead us to the opposite conclusion.
We are not, however, without the aid of decisions in this country. It will suffice to notice those in our own state, bearing directly on the subject, and it will be seen that some of the recent English cases, so far as they conflict with the plaintiffs’ claim, are directly contrary to our own.
In Buckley v. Furniss, (17 Wend. 504; S. C. 15 Wend. 137,) it appeared that the vendor, at Troy, received an order for iron from the vendee, residing at Malone, which, in accordance with the direction contained in a former order, was forwarded to the care of one Green, at Plattsburg, at whose warehouse it was received and deposited, and it there remained until the vendee sent his own carrier to Plattsburg for the iron, and it was delivered from the warehouse to him, a portion of the goods were actually carried and delivered to the vendee. Before the carrier reached Malone with the residue of the goods they were attached by a creditor of the vendee, and were thereby detained, and the vendor, in exercise of the right of stoppage in transitu, claAned such residue of the goods, and his claim was sustained by the court.
In Hitchcock v. Covill, (20 Wend. 167; S. C. in Error, 23 Wend. 611,) the vendor in Hew York sold goods to a vendee residing in Willardsburg, Pa., and, by the vendee’s direction, forwarded the goods to Havana, where they were deposited in a warehouse. There being no forwarding line at that point, the course of business was to deposit goods in warehouse, and the warehouseman kept them until called for or ordered on by the owners. By these *627 facts a state of things strikingly like those before us was established. The goods were in the possession of a warehouseman, entirely subject to the orders of the vendee. The goods “had so far gotten to the end of their journey that they waited for new orders from the purchaser to put them again in motion, without which orders they would continue stationary.”
Upon the authority of Dixon v. Baldwin, and some of the other cases above referred to, the Supreme Court were inclined to the opinion that the transitus was at an end when the goods were received by the warehouseman; and when another fact was taken into view, which also appeared in the case, there was said to be no doubt about it. The additional fact was this, that after the arrival of the goods at the warehouse the vendee came in person to Havana, with his team, to take the goods to his residence, and, as the court suggest, would have taken them into his actual possession, but finding that one of his creditors had caused- an execution to be levied on the goods, left them there. In the court of errors, however, the decision of the case is put exclusively upon the ground that, notwithstanding all the facts stated, the transitus was not at an end. The goods being, in fact, in course of transportation to the vendee, the circumstance that they remained with the warehouseman, subject to the vendee’s orders, and that they waited for such orders to put them again in motion, was held not to defeat the vendor’s right to stop the goods.
In the present case, therefore, it must be held, that the plaintiffs’ right to stop the goods did not end on the arrival of the goods at Liverpool.
- It is next insisted that the goods having arrived at the port of Hew York, and having been assigned by the vendees to the defendants for the benefit of creditors, and having been by the defendants entered at the custom house, before notice to the defendants of the plaintiffs’ claim, the transitus was at an end and the right of stoppage lost.
In relation to the effect of the assignment by the insolvent vendees to trustees for the payment of debts, it will suffice to say, that the defendants are not bona fids purchasers for value. In very many of the English cases above referred to, in which the right of the vendees to stop the goods was sustained, the claim was resisted by assignees in bankruptcy, who were deemed in no *628 better condition than the vendee himself in this respect. And in Buckley v. Furniss, above cited, the fact appeared, that previous to the exercise of the right of stoppage, the vendee had assigned' his property to the defendant and other creditors, and yet it was held that this did not affect the vendee’s right. So also in some of the English cases, and in Buckley v. Furniss, the property had been attached; and in Hitchcock v. Graves an execution had been levied thereon at the suit of a creditor of the vendee. This, however, was not deemed to make any difference.
As to the effect of the defendants’ entry of the goods at the custom house, the case of Northey v. Field, (2 Esp. 240,) shows that this would not defeat the right in England, if removal to the king’s stores be tantamount to an entry at the custom house in this country. The case submitted does not distinctly show whether the defendants’ entry was before or after the plaintiff’s demand of the goods from the carrier and officers on board the ship, but only that it was done before the defendants were notified.
Be this as it may, the case of Mottram v. Heyer, in the court of errors, (5 Denio, 629,) is conclusive upon us on this question. That case was, in the fact, that the vendee had not only entered the goods, but had received the bill of lading from the carrier and had paid the freight; stronger than the present in the defendants’ favor. And in the court below, such entry and the payment of freight were deemed such acts of ownership and termination of the carrier’s title to retain as put an end to the transitus. (2 Leg. Obs. 25; 1 Denio, 483.) But the Court of Appeals, although they affirmed the judgment on the ground that the vendor’s right was not properly exercised, held, so far as we can learn from the opinions delivered, that the transitus was not at an end, and that the right might have been asserted and maintained, had the proper claim been made on the carrier.
The plaintiffs should have judgment upon the verdict.