By the Court—Woodruff, J.
If, upon the undisputed facts, it must be held that, at the time when the property in question was taken, the defendants, Vose, Livingston & Company, had the right to stop the goods in transitu, and duly exercised that right, neither they nor their sureties incurred any liability to the plaintiffs by the taking complained of.
Whether such right existed may properly be considered by inquiring—First. Whether, as between Vose, Livingston and Company, as vendors, and the Railroad Company, as vendees, *103 the former were entitled to stop the goods ? and, Second. Whether the transactions between such vendees and the present plaintiffs, Holbrook & Nelson, had defeated that right ?
I. First, then, we inquire whether, if no advance had been procured from Holbrook & Nelson upon the security, or supposed security, of the iron, the vendors, as against the vendees, had the right to stop the goods ?
If there be any difficulty in determining this question, it arises rather from uncertainty in regard to what constitutes a delivery to the vendee sufficient to prevent the application of the general rule or to defeat it, than from any doubt respecting the rule itself.
Goods, sold on credit to a vendee, who becomes insolvent while the goods are in the hands of a carrier or middleman in their transit to the vendee, may be stopped before they come to the possession of the latter. Whether goods, in a given instance, are to be deemed in transit, and what circumstances amount to such possession in the vendee as will defeat the right of stoppage, are questions to be answered in the application of the rule. It is material to observe, that, whether the delivery be to a carrier or warehouseman, or to an agent of the purchaser, is not important. So long as such carrier or agent receives and holds the goods for the purpose of carrying or forwarding them to the vendee, they may be stopped.
In the present case the goods were sold at the city of New York to the Chicago, St. Paul and Fond du Lac Railroad Company, upon credit.
It is not denied that the vendees became insolvent before the credit expired, and before the vendors attempted to exercise the right, which they assert, to stop the goods.
The goods, when this right was asserted by the vendors, were in the actual possession of common carriers, who received them at New York, for transportation from New York to Milwaukie, on their way to the vendees at that place; and when the seizure took place for which this action is brought, the goods had reached Oswego in course of the transportation thus assumed by the carriers.
If, therefore, before the goods left New York, there had been no such delivery to the vendees, and there was no such posses *104 sion in them as would defeat the right to stop, or, in other words, if the goods were, in a legal sense, in their transit from the vendors to the vendees, then, as between Vose, Livingston & Company, and the Railroad Company, the right of the former to stop the goods was clear.
. The delivery which had taken place in Hew York was to the carriers, and for the purpose of transportation to Milwaukie. Every act done or assented to by Vose, Livingston & Company contemplated such transportation of the iron to Milwaukie, tobe used by the vendees in the construction of their railroad. The discharge of the iron from the ship in which they had imported it was directly into the boats of the carriers: their authority to withdraw it was indorsed upon the entry of the goods for transportation to Milwaukie; and the whole transaction showed the mutual intent of both buyers and sellers that the iron should be transported to Milwaukie, to be laid upon the vendees’ road; . and this was the destination contemplated at the time by both.
The presence ófthe agents of the vendees in Hew York should have no effect on this question, for they had at no time actual possession of the iron. They are not shown to have even seen the iron. • They did not, while the iron remained in Hew York, exercise any actual control over the iron itself, except in aid of the forwarding of the same by the carriers.to its destination; and what was so done consisted in making the proper entry of the ■goods at the custom-housé for transportation.
■ Delivery of goods to an agent of the vendee, or to a person employed by him, if it be done with the view and for the purpose of forwarding them- to the vendee himself, is not enough to prevent the exercise of the vendor’s right. The possession of such agent or employee, in such casé, is not the possession which terminates that right.
• Here, although the agent's of the purchasers were in Hew York, the goods -were, at most, only delivered to be carried forward.
By
By the decisions, in Harris v. Hart & Pratt, (6 Duer, 606, and 17 N. Y. R., 250,) and in Mottram v. Heyer, (5 Denio, 629,) it is settled in this State that tbe entry of goods at the custom-house, by the vendee, for the payment of duties, does not terminate the right of stoppage in transitu. In such case the goods are in the legal possession of the United States or their officers, and have *105 not come to the possession of the vendee so as to deprive the vendor of his right. (Nix v. Olive, cited in Abbott on Shipping, 393; Burnham v. Winsor, 5 Law R., 507.)
We do not perceive that an entry of the goods by the vendee for transportation can have any greater effect; the goods still remain in the legal custody of the United States; bonds are given that the goods shall be transported and delivered to the collector of customs at the port of Milwaukie, or in default thereof, that double the amount of duties shall be paid, and in order that the possession of the United States may not be deemed divested, carriers are selected, whose boats have been previously made government warehouses for the purpose of receiving and holding goods under bonds for the safe keeping and delivery thereof to the proper officers of the United States.
The actual possession was, therefore, in the carriers. The legal possession of the United States, as security for the payment of duties, was the only qualification of the carrier’s possession; and neither the vendees nor their agents had at any time such possession. And we apprehend that the true principle upon which it must be held that the entry of the goods and their being held by the government to secure the payment of duties, does not defeat the vendor’s right to stop, is, that so long as the goods are in the custody of the government, there is not, and cannot be, any reduction of the goods by the vendee, to his own possession. They are kept, for the time being, from reaching such possession.
By this, of course, we do not mean that enough was not done by the vendors to perfect the contract of sale, nor that the possession of the carriers was not for many purposes to be deemed the possession of the actual owners, (the vendees,) but the possession of the carriers was a possession for the purpose of transportation to the vendees, and was subject to the right of the vendors to stop the goods, if those events which create that right should happen while the goods were in course of such transportation.
The goods had not come to the actual possession of any agent of the vendees, for the purpose of disposal. Nor did the carriers hold them subject to the directions of the vendees for disposal, nor ás a deposit in a warehouse, subject to the order of the vendees for disposal.
*106 The only substantial change in the conditions of the goods was, that they were placed in a course of transmission to the vendees, and were in the actual possession of a middleman for that purpose; and it may be stated, as a general proposition, that a delivery of goods to a carrier or other agent of the buyer for the purpose of being carried forward to the buyer does not terminate the transit.
Mr. Justice Denio, in the case of Harris v. Pratt in the Court of Appeals, above-mentioned, (p. 252,) states the rule thus: “It is not material whether the person, in whose possession they are when the seller interposes his claim, be a carrier, a warehouse keeper, a wharfinger, packer or other depositary, or an agent for the purpose of forwarding, nor by which of the parties to the sale he was employed. He may be the agent of the purchaser, designated, paid and employed by him; yet, if the purpose of his employment is to expedite the property towards its destination, or to aid those engaged in forwarding it, the seller’s right to stay the final delivery continues.” And Mr. Justice Strong states, in substance, the same rule. Both concur, that unless the goods have come to the' possession of the purchaser, or to the possession of an agent who is the vendee’s agent for the disposal of the goods, the right to stop them continues.
We think, therefore, that as between Vose, Livingtson & Company and the Railroad Company, the former had the right to stop the goods in transitu when they seized the goods, and had, by their claim on the carrier, done all that was necessary for that purpose.
II. The second question above proposed is, whether the transactions between the vendees and the present plaintiffs (Holbrook & Nelson) defeated the right of Vose, Livingston & Company to stop the goods before that right was exercised?
This question assumes the correctness of the foregoing conclusion, that the goods had not come to the possession of the vendees, but were in the hands of a middleman on their way to their destination, and as against the vendees, were subject to the vendors’ right to stop them.
In that condition of the goods it may be stated, as the general rule, that a mere sale of the property, unaccompanied by delivery, or by anything in legal contemplation operating as a change of *107 possession, will not divest the right of the vendor to stop the goods. The purchaser from the vendee, in such case, takes only the vendee’s right; subject to the contingency which may, before the goods are received, entitle the original vendor to resume the possession and hold it until the price be paid. The rule of the common law declared in the stern maxim, nemo plus juris quam in se hahet in alienum transferre potest, furnishes the general doctrine on this subject. The severe and protracted discussions which were had in the celebrated case of Lickbarrow v. Mason, in which an exception was declared to exist where the bill of lading was transferred, and the numerous cases in England and this country in which that exception is recognized, confirm the general rule no less pointedly than if they were direct decisions upon the point. The peculiar effect given to the transfer of a bill of lading and its alleged quasi negotiability assume, that in the absence of an indorsement, or transfer of a bill of lading, a sale for value will not be sufficient to divest the right of stoppage in transitu.
To the general doctrine that the second vendee in such case stands in no better situation than his immediate vendor. (See also, Craven v. Ryder, 6 Taunt., 433; Small et al. v. Moates, 9 Bing., 574; Dixon v. Yates, 5 Barn. & A., 313; McEwen v. Smith, 6 Rolls Appeals, 340; 2 Ross’ Leading Cases on Commercial Law, 591; 85 Law Lib.; Ilsley v. Stubbs, 9 Mass., 71, 73,) and the opinions of the Court in numerous cases, if not in all, which treat of the question, what act of the vendee will defeat the vendor’s right, state or assume the rule to be that no sale or transfer while the goods are in transit, which is not accompanied by a transfer of a bill of lading will have that effect.
An assignment for the payment of debts whether directly or to trustees for that purpose, or the seizure of the goods under process of a foreign attachment by the creditors of the vendee, or the levy of an execution upon the goods under judgment against such vendee, will not defeat the right. And the vendor’s right is under the general rule held paramount to any lien against the purchaser. And in the discussion of the cases involving the questions arising in such cases, the rule above stated receives repeated sanction, not merely because in such last named cases the transferrees have not paid value, but also as in case of a sale to a sub-vendee while the goods are in transit, the equity and *108 right of the original vendor, to resume possession for his unpaid purchase-money is prior and preferable. (Harris v. Hart, 6 Duer, 606; 17 N. Y. R., 250; Stanton v. Eager, 16 Pick., 467; Bell v. Moss, 5 Whart., 189; 1 Camp., 282; 2 New., 64; 2.Bing. N. C., 83; 3 Bos. & P., 42; 3 M. & R., 396; Buckly v. Furniss, 15 Wend., 137; 17 id., 504; Naylor v. Dennie, 8 Pick., 198.)
The bankruptcy of the vendee and the consequent transfer of his title to assignees in bankruptcy are circumstances which appear in a large proportion of the cases in England, where the right of the Vendor to stop -the goods has come under discussion and been sustained.
The right therefore continues on the happening of the insolvency of the vendee."while the goods, are in transit, notwithstanding any transfer with or without value paid; or any lien sought to be created, save only in the excepted case of .a transfer of the bill of lading to be presently noticed.' .
The execution and delivery to the plaintiffs herein of a transfer of the goods as security for their advances on the 10th of July, 1857, did not therefore per se terminate the transit. There being no actual delivery and nothing being done-by the carriers changing their, relation to the goods, or the character in which they held them, the plaintiffs took by virtue of that assignment only such right as the vendees had acquired and held subject to the right of stoppage. The order of the same date on the engineer of the company could have no greater effect. He had no possession of the goods, and his recognition of the order while the goods were in transit could have no operation as against the defendants. Besides, that order was not presented to him and its obligation recognized until the 10th of- August, which was after the defendants had exercised their right to stop the iron.
It is however settled that an assignment of a bill of lading for the goods made to a third person fór a valuable consideration advanced bona fide on the faith of the bill of lading without notice of the impending insolvency of the buyer, or of other circumstances which would make such 'transfer inequitable as against the vendor, divests the right of the vendor to stop the goods, as against such bona fide holder of the bill. (Lickbarrow v. Mason, 2 T. R., 63 5 id., 367, 683; 1 H. Bl., 357; 2 id., 211; 6 East, 19, note.)
*109 And in Cuming v. Brown, (9 East, 506,) it is held, that, there being no collusion and the transferee having no notice of any other circumstance, which ought in fairness to have prevented his taking the bill, his knowledge that the goods had not been paid for in money, did not render the transfer to him invalid.
This qualification of the rule is liable to some criticism; for where there has-been no delivery of the goods, and the transferee acts upon the faith of the bill of lading, he necessarily knows that the goods are in transit, and that if not paid for they are subject to the vendor’s right to stop them if the vendee becomes insolvent. It would not therefore be inequitable to hold that, with such knowledge and knowledge also that the goods have not been paid for, he makes his advances subject to the vendor’s right, and does so voluntarily with knowledge of all the facts.
In the present case the plaintiffs were informed by the receipt at the foot of the bill of parcels that the iron was purchased on credit, and had not been paid for, otherwise than by the vendees’ notes with collateral security. This bill of parcels was delivered to them, according to the testimony of the plaintiff, Holbrook, himself, at the time he made the advance. (See Wright v. Campbell, 4 Burr., 2046, 1 Bl. R., 628; Caldwell v. Ball, 1 T. R., 205; Hibbert v. Carter, id., 745.)
But without resting upon this as an impeachment of the bona fides of the plaintiffs, there are other objections to their claim to hold as transferrees of a bill of lading.
The paper signed by the carriers is a mere receipt; it is not in form a bill of lading. It does not express the contract made by the carriers, nor indeed any contract by them. By its terms the goods are not made deliverable to any one, nor to order or assigns, and it seems to me, that it would be extending the idea of negotiability or “ quasi negotiability ” a great way, to hold that such a paper was the subject of transfer within the rule insisted upon.
The very terms “ to order ” or “ assigns ” are much dwelt upon in the discussion in Lickbarrow v. Mason, and Chief Justice Parsons in his work on Maritime law, assumes them to be “a part of a bill of lading,” though it is doubted whether they are essential. And a bill of lading is called a maritime contract, a sea document, not applicable to land carriage or inland carriers by *110 water, (Bryans v. Nix, 4 Mees. & Welsb., 775,) or the written evidence of a contract for the carriage and delivery of goods sent by sea.
Whether the peculiar effect given to the transfer of a bill of lading arises solely from the usage of merchants and the convenience of trade, or because it is expressed in such form that its transfer operates to create a new contract between the carrier and the transferree, or because the vendor by suffering a document of title in that form to come into the control of the vendee invites the faith and confidence of those with whom such vendee may deal, and who may advance money on the faith thereof, neither of these considerations can apply to the anomalous instrument given by the carriers in this case.
The reason why the carriers executed a mere acknowledgment of the receipt of the goods is readily seen. They had, prior to the delivery of these goods to them for carriage, become government warehousemen. On the delivery of these goods they could not, with safety to themselves, give an ordinary bill of lading therefor; they were under a heavy responsibility to the government, and bound to deliver the property to the collector. If an unqualified bill of lading had been executed according to the usual form, containing a contract to carry and deliver, they would have been themselves in danger, should the bill of lading be transferred to a bona fide purchaser for value; since, in such case, the carriers are held bound according to its very terms, with a strictness amounting to an estoppel, which precludes proof that they are not bound to deliver absolutely. (Ward v. Whitney, 3 Sandf., 399; Dickerson v. Seelye, 12 Barb., 99; Creery v. Holly, 14 Wend., 26; 4 Ham., 334; 11 Conn., 40.)
The paper which they executed was a mere receipt acknowledging their possession of the goods, but leaving it open to ascertainment by other proof, (including the bonds given to the United States for the delivery to the collector of the port of Milwaukie,) to determine the nature and extent of the duty assumed by them.
I am not satisfied that the transfer of this receipt placed the plaintiffs in any better position than they already were, under the previous assignment, except that possibly if they had, by virtue of such transfer and prior to the exercise of the right of stop *111 page by the defendants, obtained from the carriers a recognition of the transfer, the right to stop may have been defeated on a ground to be presently noticed.
The case of Dows v. Perrin, (16 N. Y. R., 325,) may, perhaps, be supposed to conflict with this view, and to warrant the plaintiffs’ claim to hold as assignees of a bill of lading. The precise form of the paper under which a transfer was claimed, is not stated in the report of that case, and the decision proceeds on a ground which was fatal to the transfer, whether the paper was deemed a bill of lading or not. And besides, although the property was not deliverable to order or to assigns, it was substantially the same as if those words had been in the paper, and that had been indorsed by the shippers to the transferree, for it stated, upon its face, “ that the shipment was made on his account,” and this was deemed, by the Chief Justice, to have had the same effect as if the shippers had taken a bill of lading to the owner’s order, and indorsed it.
Whether the receipt given by a carrier for inland transportation is in any case so far negotiable, that its transfer will defeat the right to stop the goods is not a point raised in that case. (Bryan v. Nix, 4 Mees. & Welsb., 775.)
The case of Jenkyns v. Usborne, (7 Mann. & Grang., 680,) holds that a delivery order forwarded to a purchaser from the vendee does not defeat the right of stoppage, and contains a useful discussion of this subject by Chief Justice Tindal. And see Akerman v. Humphrey, (1 Carr. & P., 53,) where the assignment of a shipping note, accompanied by a delivery order, is held not to defeat the vendor’s right. (McEwen v. Smith, ubi supra.)
But there is another difficulty in the way of the plaintiffs’ claim to hold as transferrees of a bill of lading.
Their advances were made before the transfer of the receipt.
If any importance is to be given to the transfer of goods in transit, arising from the actual negotiation of a bill of lading— and that is the point of the cases—then the advances for which the transferree claims should be made on the faith of the bill of lading.
Here the advances were not so made; true, the borrowers promised to procure and deliver bills of lading, but an advance on such a promise is not an advance on the faith of the bill.
*112 notwithstanding these suggestions, it must be conceded that after these transfers by the vendees to the plaintiffs, (the power of the President of the Railroad Company to make the transfer being assumed,) if the plaintiffs had applied to the carriers who were in possession of the goods, and obtained from them a recognition of the transfer, and an express or implied undertaking to hold the goods for their account, the case would have presented an important feature, assimilating it to those which hold that where the carrier enters into a new arrangement with the consignee, distinct from the agreement to carry, by which he agrees to hold the goods as the property of the consignee and at his disposal, this is a termination of the transit. Whether this can be done before the goods reach the place of destination, and under what circumstances such a recognition of a transfer by the vendee to a third person will have the effect mentioned, it is not necessary to consider here, for this reason; the plaintiffs have not shown that notice of the transfer was given to the carriers, or their recognition of the plaintiffs’ claim obtained before the defendants asserted their right to stop the goods and made their claim on the carriers. Both were done on the 1st day of August, but which was the first in order, the witness could not state; and before that day the vendees had failed, and their notes had been protested, and the plaintiffs, as early as the 25th of July, had knowledge that the vendees’ notes had been protested; at that time they had reason to anticipate the exercise of the right of stoppage in transitu by the vendors of the iron.
My conclusion is, that the defendants, Vose, Livingston & Company (the vendors) had the right to stop the goods.
I reach this conclusion without calling in question the authority of the President of the Railroad Company to make the pledge, which does not appear to me to be free from doubt.
The defendants should have judgment.
Ordered judgment for the defendants.